CALVIN FRENCH AND JOSIAH FRENCH v. HENRY M. WINSOR.

[IN CHANCERY.]

*The probate court has, in certain cases, power to re-examine de-crees, &c. Decrees of the probate court. Administrators.*

The probate court have the power, so long as the case is pending either in that court, or in the common law courts, on the bond, to re-open and re-examine any of their former decrees in the premises, and correct all errors, irregularities and mistakes. *Adams v. Adams*, 21 Vt. R. 162.

A decree in the probate court, that an administrator ought to render his account is not a final decree. Such decree is regarded as affording a sufficient basis upon which to predicate a suit upon the bond given to secure the performance of the orders of the probate court.

An administrator cannot charge in his account, for the payment of a claim disallow ed by the commissioners, after the right of appeal had lapsed, nor can he charge for the payment of a claim not presented to the commissioners, if the claimant had no farther right to petition the probate court to open the commission.

But if an administrator finds a claim not allowed by the commissioners, which was clearly due, and when no doubt could be entertained but that the probate court would extend the commission, to give an opportunity to present it, and where no question could be made as to its allowance; if under such circumstances, the administrator should pay the claim in good faith, and if under such circumstan-ces, the claim cannot be allowed the administrator in his account, in the probate court, *quere*, whether a court of equity ought not to devise some remedy.

If there is no jurisdiction whatever in the probate court, it would not lay the foundation of any resort to a court of equity.

One who is administrator of an estate, against which he has claims, may bring in his claims against the estate, on his final accounting in the probate court, or present them to the commissioners, at his election.

*Quere.* How far the orator is entitled to redress, in this suit, for his services as attorney in fact, of the intestate, if such claim should be finally disallowed in the probate court.

APPEAL from the court of chancery. The orators alledged in the bill, in substance, that one Josiah French, deceased in Janu-ary, 1825, purchased land in Clarendon, of James Winsor, for $3268,00 and secured the same by mortgage on the same land, payable with interest, and interest from the first day of April after date. That on the 23d day of January, 1825, said French paid

three notes first due, amounting to $1000, and $190,92 indorsed on the fourth note, and James Winsor deposited the remaining notes in the Smithfield Bank, in Rhode Island, for safe keeping. That Reynolds S. Wilcox and John Wilcox had a mortgage of $1900 on the premises, executed by the said James Winsor, in January, 1822, and that in September, 1826, the ultimate balance of the Wilcox mortgage, of about $1000, was paid by the said French, and this, by agreement with Winsor, was applied in part payment of French's notes to him, and that this was done to save something to Winsor. That said Winsor appointed one William Brown, his attorney, to sell his property and close his debts, &c. That in March, 1825, said Brown, the lawful attorney of the said Winsor, settled with the said French, for certain services of said French and advances by him, made before that time, for the benefit of said Winsor, and gave said French said Winsor's note for a balance of $316,28, and that said Winsor was intemperate and wholly incapable of doing business, that the orator Calvin French, was afterwards appointed attorney of said James Winsor, and settled a claim in Rhode Island, and brought the notes off, deposited in said bank, that he subsequently settled with Josiah French for James Winsor's board and other things, to the amount of $680,70, from March, 1825, to January 1827, and that he, said Calvin French, did Winsor's business for him to value of $150, but under no charge. That the 8th day of August, 1827, James Winsor died, leaving Henry M. Winsor his only child and heir, and in January, 1828, the orator Calvin French took out letters of administration on James Winsor's estate, in the district of Rutland, and the other orator Josiah French, was surety on the bond, and that commissioners were appointed and allowed claims of $400 and more, and that the orator C. French, paid other claims not presented, by offsets on French's notes, and that he paid, of those allowed and not allowed, $1000 and more, leaving $530 in his hands, and that he paid this over to Josiah Gilson, the legal guardian of Henry M. Winsor, supposing this settlement would be binding upon the defendant, and that Josiah Gilson accounted to the ward for this sum, on settlement after the defendant came of full age, and the amount passed in the probate court. That said Josiah French, deceased, by the procurement of the defendant, made his will, giving defendant all his estate, and that now, the

defendant has-cited the orator C. French before the probate court for Rutland district,— obtained a decree in court, before the orator was aware of it, and refused to submit it to his own counsel,—and now insists upon collecting the amount of all the allowance he obtained in the probate court, sued the probate bond, and claims for C. French's neglect to render his account, damage, &c., and that suit is still pending. The defendant demurred. The court of chancery sustained the demurrer, from which decree the plaintiffs appealed.

*C. French* for orators.

As a general demurrer goes to the merits of the entire bill, I insist, that as the plea is such in this case, if any part of the bill is good, and entitles the complainants to relief on discovery, a demurrer to the whole bill cannot be sustained. *Boyce's Exr's.* v. *Grundy*, 3 Peters R. 210. 1 Peters Digest 339.

Upon the argument of a demurrer, it seems the court decides upon the facts stated in the bill, whether if the cause were to proceed to a hearing and they were proved or confessed, a decree would then be made. 2 Vesey Jr. 97. 7 id. 245. 3 id. 253. 2 Shoals & Lefray 638. 6 Vesey 686. Cited in Mitford's Pl. 157 and 160.

A demurrer to a bill, for cause that the complainant has a legal remedy will not be entertained, unless that remedy appears clear, and not doubtful or difficult. Mitford's Pl. 175 (note) and cases cited.

And even upon the principle that a court of law has concurrent jurisdiction, chancery will retain theirs, unless the right has been decided or failed of a determination, through the fault of the party asking relief. *Hall et al.* v. *Dana*, 2 Aiken R. 381.

When an individual has failed to present his account or claim to the commissioners appointed on an insolvent estate, by an understanding with the administrators to allow the same in offset or payment or claim in favor of the state, such claim may be allowed and offset in chancery. *Nimms et al.* v. *Rood et al.*, 11 Vt. R. 96.

The counsel also cited, *Adams* v. *Adams*, 22 Vt. 50. *Morse et al.* v. *Slason*, 13 Vt. R. 296. *id.* v. *id.*, 16 Vt. R. 319. 9 Vt. R. 41.

If the probate court, being a court of limited jurisdiction, assume

one not granted by statute, their doings are not simply voidable, but absolutely void, *Kendrick* v. *Cleavland*, 2 Vt. R. 329 ; id. 339. *Darkin* v. *Hudson*, 6 Cowen 221.   9 Cowen 227.   19 Johns. 39. 17 Johns. 146.   *Perkins* v. *Perkins*, 7 Conn. 558.   *Smith* v. *Rice*, 11 Mass. R. 507.   *Hunt* v. *Hapgood*, 4 Mass. 117.   *Sumner* v. *Parker*, 7 Mass. 79.

*Tracy, Converse & Barrett* for defendant.

Is this a bill for discovery or for relief, or for both ?

It is not for discovery.   It is not pretended by the bill that orator wants testimony of defendant, for purpose of establishing any fact important to his rights.   If a discovery, to aid in defense of what rights and before what tribunal.   Is it a bill for relief?

Of what grievances does he complain ?

Why, it would seem he complains that defendant wants orator should settle his administration account, and has taken measures to compel him.   That probate court have said he must do so.   That from his inattention and refusal to settle his account, the court has passed a decree that he account, and that he cannot appeal from it.   That defendant has commenced a suit in name of probate court.

Orator complains of no fraud, accident, mistake or any other thing which ordinarily lay the foundation for chancery interference. Nothing done on part of defendant, to mislead or deceive him. No injustice is complained of; and none apprehended, arising from what defendant has done or omitted to do.

Nothing appears by the allegations in the bill, that he is charged or will be charged by probate court, with any thing more than he himself admits he ought to be charged with.

He cannot know, till his administration account is presented and passed upon.

Ought orator to settle his administration account ?

Was he properly called upon for that purpose ? Was he so ordered by probate court ? Has he done so ? Has he refused to do so ? Had the probate court a right to commence a suit on his probate bond, to compel him to account ? or to make him and his bail chargeable for the neglect ?

All these questions must be answered in the affirmative.

Has orator been injured in any thing that has been done ? In

no way, unless the right to appeal from decree of probate court is an injury. If so, it was one incurred by his own obstinate refusal and voluntary neglect.

But it is no grievance of which he could complain. It is none in fact.

But let it be what it may, it is nothing which a court of chancery can interfere with or remedy.

Has the probate court of Rutland district jurisdiction? It seems that orator took administration from that court. It would seem strange that that court cannot call him to an account. But the question of jurisdiction is legitimately involved in the suit on the bond.

But courts of chancery cannot try questions of jurisdiction.

Had probate court, or the defendant, a right to institute a suit on probate bond? If they had not, the remedy is plain. Defend the suit. Orator does not need aid of chancery to make out his defense. He does not invoke the interference of chancery to furnish him with any means of defense, more than he already had.

If they had a right to commence and maintain the suit, it must be for some breach of the conditions of the bond, and why should chancery interfere to prevent the prosecuting said suit? Courts of law where it is pending, have all the equity powers necessary to relieve from mere matter of penalty, can do complete justice in the case as well as equity. Against penalty or injustice he seeks no relief.

No reason is shown for the application to chancery. This court has no power to interfere with the courts of law in their proceeding relative to orator's accounting.

They have all the authority necessary to do complete justice, and there is no reason to suppose they will not properly exercise it.

Chancery has not only no authority to interfere in this matter, but there is not the slightest reason why it should, if it had. *Adams* v. *Adams et al.*, 22 Vt. R. 50. The probate court and the courts of law are the only tribunals having cognizance of this matter, and are every way emphatically the proper tribunals, having all the powers and authority both legal and equitable, peculiarly fitting them for such service. There is where the law has placed it, and no where else.

The demurrer must therefore be allowed.

This case was held under advisement, until the circuit session at Woodstock, in September, 1852.

The opinion of the court was delivered by

· REDFIELD, J. The facts alledged in this bill, no doubt make, upon the whole, a considerable impression upon the mind, that the orator has really not done any thing worthy of severe reprobation. But in saying that, we should be mindful of the maxim *audi alteram pastera*, or that one story is good, until another is told.

But in examining the case in detail, with a view to apply to it the exact rules of chancery law, it is not perhaps easy to say precisely how it is to be determined in the court of chancery, until the proceedings at law are closed, and it is thus made judicially to appear, that the orator is remediless, at law. We think it will be found upon investigation of the case in the court of probate, that the equity powers of that court are altogether adequate to granting full redress.

The object of the bill, judging from the general scope of the stating and charging parts, as well as the specific prayer for relief, seems to be to take the whole matter of accounting between Calvin French and defendant, out of the court of probate, and adjust it in the court of chancery, and pass a final decree, for the party found ultimately in arrear.

This is asked upon two grounds.

1. That the defendant has obtained an *exparte* decree of account in the probate court, by taking an undue advantage of a confidence existing between the parties, in regard to the matter.

2. That the whole matter is in the wrong probate district, and that the Rutland probate court have no jurisdiction.

In regard to the first ground for bringing the bill, it is now considered that the probate court, so long as the matter is pending either in that court, or in the common law courts, on the bond, have full power to re-examine any of their former decrees in the premises, and correct all errors, irregularities and mistakes. And possibly, this power of re-examination extends even beyond this. *Adams* v. *Adams*, 21 Vt. R. 162. *Rix* v. *the heirs of Smith et vice versa*, 8 Vt. 365. 9 id. 240.

It seems to be taken for granted in the bill, that a decree in the probate court that an administrator ought to render his account, is

a final decree, from which an appeal lies in the first instance. This is not regarded as a final decree in any other court, and we see no good reason why it should be, in the probate court. Such a decree, from its very nature, must be, to a great extent, interlocutory. It has been regarded as affording a sufficient basis upon which to predicate a suit upon the bond, given to secure the performance of the orders of the probate court. But it fixes nothing with certainty. There must be some hearing as to the amount due, either in the probate court, or in the common law courts, and in either case, the plaintiff's liability may be reduced to a merely nominal sum, which would render it quite needless to pursue any redress in the court of chancery.

We see no reason to doubt that upon the facts stated in the bill being shown to the probate court; that court would give the party a hearing, and if so, we see nothing in the case, which would clearly transcend the power of that court to adjust. It would, we know, place the matter in a very awkward position to dismiss the plaintiff's bill here, and then turn him out of court, in the probate court, on appeal. And to avoid the possibility of any such contingency, we shall probably require this suit to be retained in the court of chancery, until the proceedings in the court of probate are closed.

And if this were a case, where the party had clearly been deprived of his appeal, in due time, by fraud, accident, or mistake, the statute allowing a remedy, by petition to this court would seem to supercede the equitable jurisdiction, which has under very peculiar circumstances, been exercised in such cases.

If the court of probate and this court, upon the question being brought here, should hold, that the plaintiff in this case, upon a strict accounting, either as administrator, or attorney in fact, both of which matters, under the circumstances, must come into the same accounting, is not entitled to charge any considerable sums, which he has actually paid out for the benefit of the estate, or of his constituent, and solicits, in equity, ought to be re-imbursed, then very likely the plaintiff may be entitled to seek redress upon this bill.* And did we now see clearly, that any portion of this bill

---

* It would seem, that one who is administrator of an estate, against which he has claims, may bring in his claims against the estate, on his final accounting in the probate court, or present them to the commissioners, at his election, since it has been decided in *Adams* v. *Adams*, 22 Vt. R. that an allowance of such claims

came within that description of claim, we might determine now, that the bill is to go to a final hearing to that extent. But we do not perceive any claim in that shape. The amount paid by the orator or administrator, which was really due from the intestate, but not allowed by the commissioners, having never been presented before them, is the only part of the plaintiff's claim which seems to afford any great difficulty, even upon his own showing. For we are not to suppose that any court could be so insane as to charge the plaintiff with the value of the furniture, and the few articles of personal use, by the ancestor, and which were *bona fide* kept for the heir, on account of the enhanced value growing out of that circumstance, as it was *bona fide* supposed by the administrator, and especially where the property so circumstanced had been handed over to the heir, and for years put to his use, without objection, after he come of full age. And if the probate court should actually charge the plaintiff, under these circumstances, and the decree should finally be affirmed in this court, we do not see how the party could have any redress, in a court of equity.

But in regard to the payments, made by the administrator, of debts not allowed by the commissioners, his right to ask an allowance must, we should suppose, depend very much upon the state of facts, in the particular case or cases.

If the claim had been disallowed by the commissioners, there could be no question whatever, that an administrator who should presume to pay it could not charge it, at least if done after the right of appeal had lapsed. So too if the claim had become clearly and absolutely barred, by not being presented to the commissioners, so that there remained to the claimant no further right to petition the probate court to open the commission for allowing claims, if such a state of things ever exists, until after the final settlement and distribution of the estate, the administrator should not be allowed any discretion. And we do not intend to say that the administrator can in any case be allowed to charge for payment of claims not preferred ones, when not allowed by the commissioners.

by commissioners, is not in the nature of a valid judgment, the claimant also representing the estate. Probably the more convenient practice is to have such claims allowed by the commissioners, and nothing more was intended to be decided here, upon that point, than had been already decided in the case referred to.

XXIV.        27                                        REDFIELD, J.

But it occurred to us, during the argument, that if the administrator found a claim, not allowed by the commissioners, but which was clearly and notoriously due, and where no doubt could be entertained, the probate court would extend the commission for the purpose of giving an opportunity to present it, and where no question could be made, that it would be at once allowed, if under such circumstances it should be paid in the utmost good faith, it would surely savor of extreme justice, that the administrator should *not* be allowed the payment in his account. And if a claim under these precise circumstances cannot be allowed the administrator in his account, in the probate court, it will certainly merit grave consideration, whether a court of equity ought not to decree some remedy. This is the only point of the case which looked to us like requiring any equitable interference with the proceedings in the probate court, and we are inclined to believe the powers of that court are fully adequate to afford relief here.

The second ground for bringing the bill, we suppose was settled in this court by holding the bond valid. And this we understand to have gone upon the ground that if the defendant did not object to the jurisdiction, the plaintiff who first sought it could not. But if there were no jurisdiction whatever in the probate court, it would not lay the foundation of any resort to a court of equity, as it seems to us.

Decree of chancellor reversed, and case remanded to the court of chancery, to be retained until proceedings are ended in the court of probate, and then, if the orator elects to proceed, the defendant is to answer without terms, and if not, the bill is to be dismissed without costs.