JAMES E. BROOME, WILLIAM FISHER AND HENRIETTA, HIS
WIFE, AND SAMPSON BUTLER, APPELLANTS, VS. JOSEPH H.
ALSTON, ADMINISTRATOR DE BONIS NON OF THE ESTATE
OF AUGUSTUS ALSTON, DECEASED, APPELLEE.

1. When an administratrix conveys the property of her intestate in a deed
of marriage settlement in her own name and right, the deed is absolutely
void and the title remains in the estate. But *quere* as to the effect it might
have on the validity of the deed if the administratrix was found to be in
advance to the estate at the time of making the deed to the full value of
the assets conveyed.

2. By a rule of this Court, no final or interlocutory decree shall be entered
up without notice to the parties.

3. The general rule is, that the statute of limitations will not avail a party
in whom the law raises a trust, as against the *cestui que* use.

4. The Court of Chancery has jurisdiction where accounts are to be taken
and the property in controversy is encumbered by mortgages in the hands
of a third party.

5. A party standing in the nature of a trustee by construction of law may
purchase with his own means an outstanding lien upon the trust property
in his hands.

This case was decided at Tallahassee.

Appeal from Leon Circuit Court.

Augustus Alston in his life time being possessed of con-
siderable real and personal property and having sub-
scribed for stock in the Union Bank of Florida, executed
a mortgage on his land and a part of his slaves to secure
the stock so taken. In the year 1839 said Augustus Alston
died intestate, and administration on his estate was duly
granted to his widow, Mary Helen Alston, to whose hands
came the property of the estate of said Augustus Alston.

In November, 1843, the said Mary Helen Alston inter-
married with Sampson H. Butler. In anticipation of the
said marriage, a settlement or deed of trust was executed

by which the said Mary Helen, by the consent and with the concurrence of said Sampson H. Butler, conveyed to James E. Broome, as trustee, twenty-two slaves, in said deed specified, as the property of said Mary Helen, for the use of the parties to the marriage during their joint lives, with permission to have and enjoy the use, advantage and profit of the said slaves without constraint, control or interruption, and with power in the said Mary Helen to dispose of said slaves and their increase by her last will and testament; but, in case she made no will, the said slaves were to be equally divided between the issue of the said intended marriage and Joseph and Henrietta Alston, children by her former marriage with Augustus Alston, deceased; and in case there should be no issue of the said intended marriage, then all the slaves and their increase to be vested in the said Joseph and Henrietta Alston. The slaves conveyed in this deed of trust, part of which were embraced in the mortgage to the Union Bank, had been assigned to the said Mary Helen as her dower in the estate of Augustus Alston, dec'd. Mary Helen Alston, in anticipation of said marriage with Sampson H. Butler and with the consent of said Butler, also executed a deed whereby she conveyed twelve slaves for the benefit and advancement of her children by Augustus Alston, viz: said Joseph and Henrietta.

The slaves mortgaged by Augustus Alston to the Bank, those conveyed by Mary Helen for the benefit of Joseph and Henrietta Alston and those mentioned in the deed of trust or marriage settlement, all went into the possession of Sampson H. Butler after his marriage with said Mary Helen.

In March, 1848, Sampson H. Butler died, having made a will by which he appointed James E. Broome one of his executors and testamentary guardian of his children by

the marriage with said Mary Helen, and about a month thereafter the said Mary Helen died intestate, leaving three children by her marriage with said Butler, two of whom subsequently died in infancy, leaving the appellant, Sampson Butler, who is still an infant, as sole surviving issue of the marriage.

No administration *de bonis non* was granted on the estate of Augustus Alston after the death of Mary Helen until the year 1857, when, on the application of the appellee, Joseph H. Alston, letters of administration *de bonis non* were committed to him by the Judge of Probate of Leon county.

Augustus Alston in his life time had contracted with Noah H. Thompson to sell to him the lands of said Alston mortgaged to the Union Bank. After the death of Augustus Alston, said Mary Helen, as administratrix, executed a conveyance to said Thompson, intended to be in pursuance of said contract of her intestate, and afterwards said Thompson executed a mortgage to the Union Bank for an amount embracing, as is alleged, the stock standing in the name of Augustus Alston and twenty other shares standing in the name of one George W. Daniels, and which mortgage, covering the Alston lands and the Daniel lands and divers slaves of said Thompson, was acknowledged of record and caused to be recorded by said Thompson. It was contended that Thompson had engaged by said contract to substitute his mortgage for that of Alston, so as to relieve the Alston negroes from the liens of the Bank, and that the execution by Thompson of said mortgage was designed and done in fulfilment of his contract to take the stock and secure it on his own land and slaves.

The stock subscribed by Augustus Alston was never transferred to said Thompson, but still stands in the name of said Alston, and the Bank refused to release the mort-

gage executed by Alston to secure the same. In November, 1855, James E. Broome procured an assignment of all the claims of the Bank against the Alston lands and slaves and the Daniel lands and an assignment of the Thompson mortgage.

The bill of complaint in this case was filed by Joseph H. Alston, as administrator *de bonis non* of the estate of Augustus Alston, deceased, against James E. Broome, in which it is alleged that said Broome, being executor of the last will and testament of Sampson H. Butler, deceased, took possession of his estate and at the same time took possession of the slaves named in the deed of trust or marriage settlement and has ever since held, kept possession of and controlled the same; that he has hired out said slaves, collected and received large sums of money due for hire and has in every respect dealt with, managed and conducted himself with regard to said property as if he was legally authorized to do so, and has not accounted to any person for his acts; that said Broome did not set up any title to said slaves, but, on the contrary, at all times admitted the said property to be held by him subject to the demands of any lawful representative of Augustus Alston, deceased. The bill prays that defendant Broome may be decreed to surrender the negro slaves to the complainant as administrator *de bonis non* of Augustus Alston, deceased, and to render an account of the monies recieved for hires during the time he had them in possession, and that the complainant be decreed to be entitled to the benefit of the settlement with the Union Bank and to the benefit of all transfers or assignments made by the Bank to said Broome of the claims against Augustus Alston, deceased, and of the Thompson and other mortgages.

Defendant Broome, in his answer, admits, that all the slaves which were in the possession of Augustus Alston

at the time of his death were either embraced in an allotment of dower to the said Mary Helen, or were covered by liens of mortgages in favor of the Union Bank, or were embraced in the conveyance made for the benefit of complainant Joseph and his sister Henrietta; that the rest of the estate had been fully administered by Mary Helen at the time of her marriage with Sampson H. Butler, and that the estate was largely indebted to her for advances; that at that time property was much depressed, and the estate of Augustus Alston was deemed insolvent and the property covered by the mortgage and claims in favor of the Union Bank was not at the then prices and the then value of Union Bank liabilities sufficient to discharge the incumbrances of the Bank.

The answer further alleged, that it was not long after said Thompson executed his mortgage before he began to resort to all efforts to avoid taking the stock subscribed by Alston, and insisted that he was not bound to do so, and that his mortgage was without consideration and not binding; that the slaves embraced in the marriage settlement, as well as those mortgaged to the Bank, which went into the possession of Sampson H. Butler after his marriage with Mary Helen, remained on the plantation of said Butler during the year 1848; that during this period none of the creditors appeared to relieve the executors of Butler of the possession of any of this property mortgaged to the Bank, or to disencumber such property, or to assert any claim to the trust negroes, or to assume the burden of settling with Thompson or the Bank and arranging the entangled affairs of this estate; that it was evident at that date that the general creditors were little disposed to enter upon a legal settlement of the affairs of the estate, and that they had little hope of realizing anything after in-

curring the trouble, delay, hazard and expense and litiga-
tion incident to such an effort; that this defendant was
appointed by Col. Butler one of his executors and testa-
mentary guardian of his children by said Mary Helen for
the especial purpose of taking care of the interest of said
Mary Helen, and his co-executor, well knowing the exist-
ence of said deed of marriage settlement, sent all the
Alston negroes (so called) to this defendant, from Madison
into Leon county; that the slaves embraced in the mar-
riage settlement and covered by the mortgages of the
Bank this defendant kept in possession and has hired
them out annually by private hirings and with a view to
the comfort and happiness of the slaves as well as to make
them profitable, but this defendant denies that he received
the possession of said slaves in any other manner than as
guardian of the interests of the family of the late Mrs.
Butler or with any other view than to devote his efforts to
make some arrangements to further their interests; that
this defendant is advised (although he did not, under the
necessities of the case, form for himself any opinions on
the subject which controlled his action) that it was his
duty, under the marriage settlement, to take and hold pos-
session of the property therein conveyed, and not to sur-
render the same without the direction and order of this
Court, and that this defendant was bound to use all efforts
to disencumber, for the benefit of the beneficiaries, all the
slaves in said deed mentioned which were in the mortgage
to the Union Bank; and defendant insists, under the facts
of the case, that he was no volunteer or executor *de son
tort*, or trespasser, so as to subject him to the displeasure
of this Court and its condemnation, but that, on the con-
trary, he was the representative of infants, acting under
the injunction of highest obligation as well as under a
positive appointment as trustee, seeking to do the best he

could for the orphans committed to his care; and this defendant, as now advised, insists that said deed of marriage settlement did pass an adverse title and possession to defendant and those beneficially interested, and that said settlement was made upon valuable consideration and in good faith and with the honest impression on the part of the parties to the marriage that said Mary Hellen did own said property and could convey the same as in and by the said deed of settlement the same is conveyed; and this defendant prays the benefit of the lapse of time in favor of the adverse possession acquired by said Butler under said trusts from the day of the date of said deed.

And, further answering, this defendant says, that after he came to the possession of said slaves nobody appeared to lay claim to the same except the Union Bank of Florida, whose encumbrances were sufficient to exhaust the mortgaged property, and which said Union Bank of Florida, as this defendant was informed and believes, contemplated a transfer of its claims to effect a settlement, or some other movement with a view to the same object; that the transaction with Thompson referred to and the giving of the mortgage by Thompson raised a question whether the Bank could further claim a lien upon the Alston negroes under the Alston mortgage; that this defendant, under such state of things, did not feel authorized to fold his arms in indifference and suffer the property to be sacrificed for the want of an effort to do something for the children, but, on the contrary, felt himself authorized to press upon the consideration of the officers of the Bank the claims of the children of Augustus Alston and did urge upon the Bank the necessity of and propriety of making some arrangements for their benefit; that under the strong appeals made by this defendant, the President, Col. Gamble, agreed to the transfer for their benefit by a verbal ne-

gotiation made in May, 1850, by which defendant was to secure the payment of the amount agreed on, upon good security, to be supplied by defendant, all the claims of the Bank against the Alston lands and slaves; and the Thompson mortgage to be assigned without further consideration that this defendant might litigate or settle with Thompson; that when these negotiations came to be closed formally in January, 1851, it was discovered that the Thompson mortgage embraced other stock and other property, and the President required this defendant to make further provision for the Daniel's stock and stock note; that all that was to be added to the fund by such further additional liability was 160 acres of land, not then supposed to be worth $3 per acre, and which were in the adverse possession of said Thompson; that this defendant was not ready to assent to this unexpected demand and the negotiation was postponed (delayed but not abandoned) until the 17th day of November, A. D., 1855, when this defendant procured an assignment of all the claims of the Bank against the Alston land and slaves and the Daniels land and an assignment of the Thompson mortgage; that the consideration specified was intended to provide the sum of $16,600 of territorial bonds, endorsed by the Union Bank, and the sum of $24,382 in the ordinary liabilities of the Bank, and is protected by a mortgage on the individual estate and property of this defendant; that this negotiation was not begun or made by this defendant, assuming to act as representative of Alston's estate, as in said bill is alleged, but was instituted for the exclusive benefit of Joseph and Henrietta individually, for whom this defendant felt authorized to make the best arrangements he could, and was concluded for the benefit of Henrietta and this defendant as assignee of the interest of said Joseph; that this defendant is now

advised, that, under the construction given to the deed of marriage settlement by his solicitors, the said Sampson Butler may lay claim to participate in the benefit of the negotiation, at least to the extent of the property embraced in both mortgage to the Bank and marriage settlement.

Afterwards, William Fisher and Henrietta his wife, formerly Henrietta Alston, and Sampson Butler, by his next friend on their petition, were, by order of Court, made parties defendant in this cause.

On the 4th day of October, 1858, William Fisher and wife and Sampson Butler, by his guardian *ad litem*, filed their several answers, in which they claim the benefit of the said deed of trust or marriage settlement, insisting that the same passed a good title to James E. Broome as trustee, and that they, as *cestui que* trusts, are entitled to the beneficial interest in the property therein conveyed to the total exclusion of complainant as administrator *de bonis non* of the estate of Augustus Alston, dec'd. With reference to the purchase made by James E. Broome from the Union Bank, they claim that it was made by said Broome, not as representative of the estate of Alston, but, in virtue of his relation to the children of said Mary Helen, as their trustee and friend; Sampson Butler claiming that the benefit and advantage thereof should be held to enure to his *cestui que* trust, and Wm. Fisher and wife claiming that the said purchase should enure to said Henrietta Fisher jointly with Joseph H. Alston. They further alleged, that the said Mary Helen, in the progress of her administration of the estate of Augustus Alston, made large advances of money belonging to herself in payment of the debts of said estate; that these sums are believed to have exceeded the value of the slaves appropriated to herself in payment thereof and conveyed by her to said Broome by

said deed of marriage settlement; that by reason of such advances her title in equity became good to said slaves, or, at least, so many thereof as were of value sufficient to refund said advances.

On the 12th day of October, the Court below rendered a decree declaring the deed of marriage settlement void, and that complainant was entitled to the possession of the slaves therein conveyed as assets of the estate of Augustus Alston, dec'd; that defendant Broome render an account of the profits of the said slaves and for all his dealings with respect thereto, and that complainant was entitled to the benefit of all purchases made by said Broome of all claims against the estate of Augustus Alston and of all contracts entered into with the Union Bank in respect to any claim or debt held by said Bank against Augustus Alston, dec'd, and also to the bond and mortgage of Noah H. Thompson assigned to said Broome.

From this decree defendants appealed.

*Archer & Papy* and *R. B. Hilton* and *H. A. Corley* for appellants.

*W. G. M. Davis* and *D. P. Hogue* for appellee.

PEARSON, J., delivered the opinion of the Court.

Joseph Alston, administrator *de bonis non* of the estate of Augustus Alston, deceased, seeks by his bill to recover the possession of certain slaves, with an account for their hire, conveyed in a deed of marriage settlement by Mary Helen Alston, the widow and first administratrix of Augustus Alston, deceased, to James E. Broome, as trustee, for the uses therein declared, in consideration of an anticipated marriage on her part with Sampson Butler. These slaves consisted of those allotted to the widow Alston as her dower or statutory portion of her husband's slaves, in

which she took a life estate only, a part of which were subject to a mortgage made by him in his life time to the Union Bank of Florida. This deed of settlement bears date the 29th November, 1843, and soon afterwards the contemplated marriage took place; but the slaves did not go into the actual possession of Broome until some short time after the death of Butler, which occurred in March, 1848, his wife dying about a month thereafter.

To the slaves mentioned in this deed of marriage settlement Mrs. Alston had two separate and distinct titles: to the slaves allotted her for dower an independent life estate in her own right, and, in addition thereto, in her character as administratrix, she held the legal title to the reversion and the equity of redemption of those mortgaged to the Bank. All the interest, then, attempted to be conveyed by this deed of marriage setttlement belonged to the estate of Augustus Alston, except only her life estate in the slaves allotted to her under the statute in the nature of dower; and yet she contracts in her private right and character and without reference to her power or authority as administratrix to dispose of all these interests, and that too upon a consideration, however good and valuable in law, moving to her solely and in no wise to the estate of her intestate. Merely to state this point is sufficient to settle it. The numerous cases we find in the books of the mal-administration of assets and misapplication of funds seem to arise where the administrator acted or contracted in virtue of his character of administrator. Such cases have nothing to do with the question involving the validity of this deed. Here was an evident attempt to dispose of the assets of the estate in her private right and for her private use and benefit without the slightest reference or resort to her official character and authority. To allow such a procedure to stand would be to annul all distinc-

tions between the property of the estate of an intestate and that of his administrator, and to go back to the dogma which prevailed in the ancient times of Mr. Justice Buller, who held that the property of an estate in the hands of an administrator to be administered might be taken in execution for his, the administrator's, private debt. This extreme doctrine was very soon modified by the good sense of the English Judges, and modern adjudications have rendered the whole doctrine conformable to principles of reason and justice. This deed, therefore, must be considered as absolutely void in so far as it attempts to convey any portion of the estate of Augustus Alston. The legal title remained in his estate and was succeeded to by his administrator *de bonis non* as a portion of his effects unadministered. This suit may, then, be well maintained by this complainant, and it only remains to examine what are the defences presented on the part of the defendants for the consideration of the Court.

It is alleged in the answer, amongst other objections to the complainant's claims, that Mrs. Alston was in advance to the estate of her intestate to the full amount of the value of all the interests of the estate disposed of by her in the deed of marriage settlement. The proof of this, it is alleged, was of record in the Probate Court, and would have been presented to the Court but for the fact that the case was not set down for argument after Fisher and wife and Sampson Butler had, upon their petition, been made parties to the bill. Mrs. Fisher was a daughter of Mrs. Butler by her first marriage with Alston, and Sampson Butler a son by her last marriage with Butler. Upon the hearing of their petition to be made parties counsel was heard, it was admitted, at bar, in explanation of their rights and interests. Their application being allowed, they were made parties, and within eight days thereafter

the Court proceeded to pronounce its decree without notice to them. It does not appear from the record that the case was set down for argument, and the only evidence therein that these new parties were heard upon the merits is the recitation in the usual and formal manner at the beginning of the decree that the parties had been heard by their counsel. This, it is contended, is mere form and was not intended to and does not preclude these parties from adducing such evidence as they may think proper in support of their claims. It may be so, and, in a matter of such doubt, we think they ought not to be debarred from the adduction of their proofs and a full hearing upon the merits.

If the fact should turn out, as stated in the answer, that Mrs. Alston was in advance of the estate of her husband as administrator to the full amount of the assets of the estate disposed of by her in the deed of settlement, we will not decide in advance what effect it might have upon the validity and effect of that deed; but, in any event, whatever amount, if any, may be found due her from the estate, that will enure to the beneficiaries under the deed.

There is another and very sufficient ground upon which the decree in this case should not be permitted to preclude the distributees of Mrs. Alston from a full hearing upon the merits. By a rule of this Court, adopted in 1854 and published in an appendix to the fifth volume of Florida Reports, it is provided "that decrees, whether final or interlocutory, not embracing orders of course, shall be upon notice to the parties or their attorneys before making or pronouncing the same, and a statement by the Judge to the effect that notice has been given, shall be sufficient evidence thereof." It does not appear in any wise that this rule has been complied with, and the parties complaining

of the decree may well claim to have it opened upon this account.

It is further objected, that the complainant should not be permitted to proceed with this cause, because he does not allege in his bill that he was prompted by persons interested in the estate of Alston, or moved by a personal interest or a sense of official duty, and the authority of Lord Eldon, in 17 Vesey, 171, and that of Chancellor Harper, in Riley's Chan. Rep., 35 and 36, are quoted with much force upon this point. We think, however, that this case does not fall fully within the rule laid down by these eminent Chancellors. The rule seems to be founded upon two elements: the lapse of time, rendering the demand stale, coupled with the absence of any apparent necessity on the part of the administrator to prosecute the suit. Ordinarily, there is no legal necessity for an executor or administrator to show in whose behalf he seeks to obtain a recovery in behalf of the estate he represents. He is charged with the collection of the assets of the estate, and, to the extent that he may realize them, the law imposes the duty of responding to the claim of creditors and distributees; and it is only in cases where, from lapse of time and other circumstances, there is reason to believe that the estate has been settled to the satisfaction of all parties interested, as evinced by their long acquiescence, and, the suit appearing unnecessary, that the Court would apply the rule. In this case, it does not appear that the creditors, if there be such, have acquiesced in the settlement of the estate for any considerable length of time, it appearing from a statement filed in the Probate office and made an exhibit here in the answer of defendant Broome that many of the creditors of the estate sued and obtained judgments at law during the administration of Mrs. Alston, and it can well be conceived that they were pre-

vented from further proceedings by the circumstances in which the estate stood. A part of the property here sought to be recovered was subject, in the first instance, to Bank mortgages, while the whole was subject to the life estate of Mrs. Alston under her allotment of dower, as regulated by our statute. Under such circumstances, a creditor could have had but little encouragement to press his claims. We think, therefore, that this case is distinguishable from those to which we have been referred, and that the complainant should not, on this account, be estopped from proceeding with his cause. In this connection, it was urged that the creditors should have themselves complained, or should now be called in; but we see no necessity for this, and consider that it would be a work of supererogation, since they are already represented by the administrator *de bonis non*, who is accountable to them in the due course of his administration.

The statute of limitations has also been set up as a bar to the complainant's recovery. We think, however, that the defendant Broome does not stand in a position to avail himself of this defence. If the deed of settlement had been valid, he might, perhaps, have set up an adverse possession as trustee against all others save the beneficiaries under that deed; but that conveyance being void and the title to the property therein conveyed remaining in the estate of Alston, the law raises a trust in him in behalf of those interested in the estate, upon the broad general principle that equity will follow trust property into whatsoever hands it may be found and subject it to the trusts originally existing concerning it. Broome, then, becomes a trustee in so far as the property in his hands is concerned. For those interested in the estate of Alston, his possession was in effect their possession, and he may not claim as against them the lapse of time to give him title.

It is further objected, that the complainant had adequate remedy at law in this case. If this be so, it does not necessarily follow that the jurisdiction of the Court of Chancery is ousted.

In the view which the Court has taken of the deed of settlement, Broome is clothed with the character of a trustee in regard to the property of the estate of Alston found in his hands, and is required to account for the same, with its income. Matters of account are one of the ordinary sources of equity jurisdiction, because of the greater facility and more improved methods of taking the account. But this question is so fully settled by a majority of this Court, in the case of Linton vs. Walker, that it is useless to enlarge upon it here. In that case, a suit at law was dismissed, because, in the opinion of the Court, chancery afforded a more appropriate method of adjusting the accounts, and the fact that this property was encumbered by mortgages to the Bank affords another ground for invoking the chancery jurisdiction.

It appears from the bill and answer, that Broome, while acting under the deed of trust, purchased, avowedly for the benefit of the beneficiaries under the deed of marriage settlement, certain mortgages and judgments from the Union Bank of Florida, with the intention, as he declares, of disencumbering the trust property in his hands from those liens. These purchases, it is stated in the bill and affirmed in the answer of Broome, were made with his own means, he having substituted mortgages upon his own property in lieu of those which had been given by Alston in his life time to the Bank. It is probable that the skill and credit of Broome, together with the orphan condition of the children he represented, may have had much influence in effecting favorable arrangements with the Bank in their behalf; yet the benefit of these pur-

chases and arrangements is now claimed for the estate of Alston, upon the suggestion that Broome had or should have had funds arising from the hire of the negroes in his possession sufficient to have accomplished his purposes. It must be considered, however, that there were other claims upon the fund arising from the trust property in his hands, to wit: charges incident to the care and management of the property itself, to say nothing of the support and maintenance of the children for whose use it had been conveyed to him. There is no reason to suppose that he would have encumbered his own property to effect his beneficent object, provided a convenient fund had been at his disposal applicable to such purpose. If in fact funds arising from the property of the estate of Alston had been applied to the purchase, the principles of equity might have made the purchase enure to the benefit of that estate; but this was by no means the case. Broome declares in his answer that he had no participation in the preparation of the deed of settlement under which he acted; that he knew nothing of it or of its contents until it was brought to him for his signature while lying on a sick bed; that these orphan children were committed to his charge by his sister-in-law in her dying moments, and that all his efforts had been directed to save something for them from an estate which the exhibits filed in the case show was irredeemably insolvent. His purchase of these Bank securities was unquestionably with this view and to this end. He had no general connection with the estate of Alston and was responsible to it in no wise beyond the liabilities cast upon him by reason of the trust under which Mrs. Alston held the property. He acted not for the estate of Alston, nor with its funds, but solely with his own means, in behalf of the children whose charge he had accepted. To divert the skill and credit thus employed from the true

and beneficent channel in which it was intended to flow, to objects indifferent to him, revolts all human sentiments as well as every principle of equity and good conscience, which can never permit the estate of Alston to speculate upon the well-meant charities of a stranger to it. The entire benefit, therefore, of these purchases must enure to the children of Mrs. Alston, afterwards Mrs. Butler, (Joseph and Henrietta and the infant Sampson Butler,) the beneficiaries in the marriage settlement, in whose behalf Broome, the trustee, declares that he acted.

Broome must account strictly to the estate of Alston for the negroes received by him as trustee under the deed of settlement, but, in so doing, he is to be allowed, upon the principles recognized and established in the late case of Linton vs. Walker, 8 Florida Reports, all reasonable disbursements and charges incurred in and about the care and management of the property.

The decree of the Chancellor herein is therefore reversed, set aside and reformed so far as to conform to the principles laid down in this opinion, and the cause remanded for further proceedings not inconsistent therewith.

BALTZELL, C. J., dissents from so much of the opinion of the majority as asserts the deed of Mrs. Alston void. He regards it but as a transfer of the dower right and interest in the life estate, as conveying nothing else and as good for this purpose.

The purchase of Broome from the Union Bank he regards as made for the estate—so much as relates to the personalty for the administrator and as to the realty for the heirs. Broome is a trustee as to this and the other property, not by any declaration he may have made of his purpose or design, but through his interference with the property of the estate.