J. M. LEE, as Comptroller, M. A. SMITH, as Liquidator of the Bank of Monticello, Appellants, v. A. R. JOHNSON, J. T. HARLEY, J. B. SHUMAN, J. V. JOHNSON, T. I. CURRY, and J. M. TEATE, Cross Appellants and Appellees.

168 So. 398.
Division A.
Opinion Filed May 18, 1936.

*R. C. Horne,* for Appellants;

*W. J. Oven, James Messer, Jr.,* and *W. J. Oven, Jr.,* for Appellees and Cross Appellants;

*Davis & Davis,* for Appellee, J. I. Folsom.

DAVIS, J.—This was a suit in equity brought by appellees, Johnson, and others, in the court below in their own right and on behalf of all others similarly situated, for the purpose of having a final judgment entered in their favor as depositors in the defunct Bank of Monticello decreeing that said Bank of Monticello held certain moneys in trust for the plaintiffs and all other persons similarly situated at the time it closed its doors after having been reopened and allowed to do business under a "freezing" order of the State Comptroller. The Chancellor below sustained the prayer of the bill and found that at the time the bank closed the last time it held $10,073.79 in trust for the plaintiffs and other persons similarly situated; that said amount was a preferred claim against the liquidation of the said bank and required the liquidator to pay the same to one J. I. Folsom, who had assumed the duties of trustee and filed a claim for said sum in order that he might distribute the same amongst the various beneficiaries of the trust after paying the costs of the proceeding and certain solicitor's fees allowed to plaintiffs' attorney in connection therewith.

From the final decree so entered, the defendant, J. M. Lee, as Comptroller of the State of Florida, and M. A. Smith, as Liquidator of the Bank of Monticello, have entered their appeal to this Court. At the same time the plaintiffs below entered their cross appeal from the final decree, naming Folsom as cross appellee, for the purpose of having said Folsom decreed on appeal to be a co-trustee with the bank and thereupon held liable to the plaintiffs for the difference between the amounts that may be collected from the Liquidator and the amount of the trust account and to have

the same impressed as a common law judgment against Folsom for the difference.

Concretely presented, the situation ·is one where the Bank of Monticello first suspended payments on July 17, 1926,. but was subsequently reopened under an agreement entered into between the bank and ninety-five per cent., or more, of its depositors, including the plaintiffs below, whereby it was. agreed that the bank issue to each of such depositors a certificate of deposit in an amount equivalent to $57\frac{1}{2}\%$ falling. due at stated intervals over a period of three years, $42\frac{1}{2}\%$ of the deposits being written off and certain assets taken. out of the bank to be collected by a trustee for the benefit of the depositors. The freezing order was entered pursuant to Section 6108 C. G. L., 4167 R. G. S., as amended by Chapter 11849, Acts 1927, Chapter 13567, Acts of 1929, and Chapter 14487, Acts 1929. In the course of carrying out the terms of the "freezing" agreement the insolvent bank, which had thereby been placed in a condition of solvency and been allowed to be reopened for business by virtue of such agreement, from time to time collected and received for the benefit of the depositors who had become parties to freezing agreement certain moneys that were kept. in the bank and credited in the name of the trustee as depositor. No distribution of the collected funds was made for a period of several years, during which time the condition of the reopened bank grew steadily weaker, with the result that it closed for the second and last time on September 21, 1932, at which time one B. J. Hamrick was appointed Liquidator.

When the bank reopened under the "freezing" agreement. of September 13, 1926, Frank B. Cook was selected as trustee. He was succeeded in December, 1926, by one J. I. Folsom, who assumed his trustee responsibilities and duties

and collected through the bank various assets which were kept in the bank in an account styled: "J. I. Folsom, Trustee."

When the bank suspended business a second time on September 21, 1932, Folsom filed a preferred claim with the Liquidator for a balance of $10,073.79, which was the amount of funds that had been collected, received and kept in the bank for the benefit of the "freezing" agreement depositors. This claim, however, was rejected as a preferred claim and allowed as a general claim only. Thereupon the interested depositors employed counsel and filed the bill of complaint that is under consideration in the present case. The prayer of the bill was for an accounting from the defendants, M. A. Smith, as general liquidator, and J. I. Folsom, as trustee, the establishment of the preferred claim against the liquidatable assets of the bank to the extent of $10,073.79, the removal of Folsom as trustee, and that Folsom be required to make good any loss sustained by the trust fund by reason of his fraud and neglect and alleged conspiracy with the bank of which he was President to keep said trust fund in the bank in order to improve its financial condition, the allowance of a solicitor's fee for the conservation of the trust, and other relief.

Defendants Smith and Lee moved to dismiss the bill, as did Folsom. The motions were denied. Thereupon an answer was filed by defendants Lee and Smith that in effect denied all the essential allegations of the bill except the formal closing of the bank, the appointment of the liquidators, the fact of Folsom's deposit, and the filing of its preferred claim. The answer further set up the contention that the Folsom deposit of the involved $10,073.79 was a general one and that there was only $880.40 in cash in the bank at its formal closing. An offer to pay a dividend of

40%, the amount paid general depositors, to anyone whom the court might designate was tendered.

A separate answer filed by Folsom admitted the allegations as to the first closing and reopening of the Bank of Monticello, the trust agreement, Cook's trusteeship thereunder, that Folsom had become a director of the bank upon its reopening, and eventually its President (with the understanding, however, that he was to take no active part in the management thereof), and that after Cook's death he permitted the bank to use his name as trustee, in connection with which status the bank turned over to him certain papers and documents connected with the trust estate. Folsom denied that he had ever conspired with the bank to keep the trustee's collection on deposit therein and averred that no demand for a distribution had ever been made upon him by anyone, although many of the depositors knew of his activities in the premises. Folsom further averred that he was without knowledge that the bank would suspend payments a second time until the night before it did so, and that in keeping with his putative status as a trustee that he had filed the preferred claim against the bank, but that no part thereof had been paid.

All issues of law and fact raised in the litigation in the court below having been decided by the Chancellor in favor of the claimants, the sole question presented by this appeal is whether or not the Chancellor's finding that the moneys collected through the bank under the "freezing" agreement and kept on deposit therein in the name of a person known and described as "trustee" should be paid as a preferred claim against the liquidation of the defunct Bank of Monticello under the rules of law applicable to the allowance of preferred claims against the estates of insolvent banks.

The purpose of the so-called "freezing" law (Section

6108 C. G. L., 4167 R. G. S., as amended) was to enable a suspended bank to be put in a position of solvency and thereupon authorized by the Comptroller to resume business upon the consent in writing of the prescribed percentage of the total deposits of the bank at the time its assets are ordered "frozen."

The practical operation of the statute is to create the reopened bank into an agency of liquidation for its own insolvent affairs. Thus a bank closed by threatened, rather than actual insolvency, may be reopened upon condition that its pre-existing deposits be "frozen" as a means of restoring it to sound condition. Moneys collected for depositors under a "freezing" agreement by a reopened bank, or by its officers out of its liquidatable assets for the purpose of complying with such "freezing" agreement, are, in contemplation of law, collected and received by the reopened bank to be held in trust to be disbursed to the depositors under the "freezing" agreement.

That being the situation, the business, assets and affairs of the reopened bank are chargeable as a matter of law with liability for all moneys collected for the benefit of the depositors under its own "freezing" agreement pursuant to which the bank was allowed to reopen and do business. Therefore the Chancellor below was eminently correct in decreeing the amount of moneys shown to have been collected by the reopened bank in this case as a preferred claim against the assets of the closed bank in the hands of the liquidator appointed pursuant to the second closing.

Had the moneys collected by the reopened bank been actually distributed to the depositors entitled to receive same under the "freezing" agreement and thereafter by them redeposited with the reopened bank as a new account the situation would be different. But here the case is simply one

where the reopened bank was not only a trustee by its own choice, but became a trustee by virtue of the legal effect of the "freezing" law itself acting upon the moneys collected by the reopened bank for the benefit of depositors who had signed the "freezing" agreement and whose rights had consequently been in part surrendered as a basis for the bank's being allowed to be reopened at all.

As to the cross assignment of error to the effect that Folsom should be personally charged with liability for a difference between the amount of the decree and avails that may be realized upon it out of the assets of the defunct bank, we fail to find in the record any such showing of culpability on Folsom's part as will sustain a judgment against him in the premises. Therefore the cross appeal and the assignment of error must be held to be without merit.

It follows from what has been said that the Chancellor committed no error in adjudging the bill to contain equity and that his final decree predicated thereon being supported by the law and the evidence is correct and should be affirmed for the reasons hereinbefore given.

Affirmed on appeal.

Affirmed on cross appeal.

WHITFIELD, C. J., and BROWN, J., concur.

ELLIS, P. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.