John A. Dunscombe, *et al.,* (Chas. F. Dirr, Originally Complainant) v. M. A. Smith, as Liquidator of Stuart Bank & Trust Company.

174 So. 38.

Division A.

Opinion Filed April 27, 1937.

798

*Carroll Dunscombe,* for Appellant.

*Smith* and *Kanner,* for Appellee.

BUFORD, J.—In 1926 Stuart Bank & Trust Company was closed by order of the Comptroller and later, in October of the same year, was permitted to reopen under a freezing agreement. The terms of that agreement were that 25% of the deposits of the bank on the date of closing would be made immediately available upon reopening; 50% was to be paid by the issuance of 5 certificates of deposit in the amount of 10% each, payable over a period of 15 months and the balance of the deposit written off as a liability of the bank. In order to satisfy the depositors the bank agreed to create a trust of certain securities then on deposit on call through the Bankers Trust Company of Atlanta, Georgia. The agreement was:

"Regarding the 25% of depositors'. funds held subject to collection of the 'Atlanta System' claims: As these claims are paid the proceeds will be deposited as a separate fund in the Trust Department of the bank, to be paid over to depositors as rapidly as they are available, share and share alike. They have every reason to believe that at least a portion of these funds will be recovered and it is the hope and expectation of the officers of the bank that in the final outcome the ultimate loss may be small."

Under this agreement the proceeds from the securities referred to became in law a trust fund in the trust de-

partment of Stuart Bank & Trust Company. The proposition to creditors indicates that the aggregate amount of securities referred to as "Atlanta System" paper was $300,000.00. It is alleged, however, that the actual amount of those securities was $296,500.00 and that from these securities the sum of $90,000.00 had been collected for the benefit of the trust.

On March 16, 1929, after the alleged collection of the sum of $90,000.00 of this trust fund Stuart Bank & Trust Company closed again. O. Nobles was appointed Liquidator and was succeeded by M. A. Smith when the law providing for a general Liquidator went in force.

On November 15, 1935, Dirr filed his bill of complaint as a class suit in behalf of all those persons who were ·depositors in the bank at the time of its first closing, by which suit he sought to enforce the trust. He alleged that the trust funds had been unlawfully, negligently and fraudulently commingled with moneys of the bank, asked that an accounting be had. and, if it appeared that the allegations of the bill of complaint were true, that a trust be imposed for any shortage due the trusts upon any moneys or securities in the bank to replenish the trust fund. John A. Dunscombe was substituted as a party complainant. The appellee filed his motion to dismiss. The Court granted his motion with permission to amend in order to show a claim had been filed with the bank for this money within one year after appointment of the Liquidator under Section 6104 C. G. L. The appellant thereupon amended his bill and attached receipt for claim filed with the bank and C. O. Gallagher intervened and filed a bill stating that she had not filed any claim, but alleged that she was entitled to participate in this fund, regardless of such failure to file claim.

Motions were made to dismiss amended bill and intervenor's bill. The motions were granted.

From the orders dismissing the bills of complaint the appeals were taken.

First, we are impressed with the fact that Stuart Bank & Trust Company was a banking institution authorized to do a trust business in this State and, therefore, the Trust Department of that bank could lawfully undertake to act as Trustee for the depositors in receiving the moneys derived from the collections of the securities held by the Atlanta bank subject to call of Stuart Bank & Trust Company. The law involved in this case applicable to such a trust fund is stated in the opinion in the case of Campbell, *et al.,* v. Vining, as Receiver, 102 Fla. 639, 133 Sou. 555, where we held:

"The words 'The State Comptroller may forthwith designate and appoint a receiver to take charge of the assets and affairs of such bank' imply and mean that the receiver in his representative capacity takes title to the assets and affairs of the institution and the Comptroller has complete discretionary power over them, subject to the other provisions of the Act, and the 'affairs' of the bank include all business interests of the bank, including trust estates of every character lawfully held by the bank for which receiver is appointed and the receiver is charged with handling such trust matters in the same manner in which the original trustee was charged with handling such matters until such time as a substitute trustee may be duly appointed by a court of chancery having jurisdiction of the matter.

"The provision that 'such receiver shall pay all money received by him to the State Treasurer to be held as a special deposit for the use and benefit of the creditors

subject to the order of the Comptroller', will not be held to apply to monies received by the receiver as acting trustee, because this provision of the statute clearly applies to funds in which creditors of the defunct banking institutions have an interest and such creditors can have no interest in funds accruing from trust estates held by the defunct bank in its trust capacity.

"It is the duty of the Comptroller, through his receiver or agent, to execute the trust according to the terms under which the trust was created.

"Equity has jurisdiction in all matters relating to trust estates and may direct the conduct of trustees in their dealings with property which is held or controlled by a trustee and adjudicates the rights between trustees and beneficiaries of the trusts."

In the case of Glidden as Administratrix, etc., v. Gutelius, et al., 96 Fla. 834, 119 Sou. 140, we held:

"Where trust fund was commingled with funds belonging to trust company, and commingled fund was invested in securities authorized by statute to be subject of investment of trust funds, cestui que trust was not limited to satisfaction of claim from lowest amount of cash on hand at any time after trust was created, but he could follow trust fund into securities purchased with commingled funds, and have those securities decreed to be impressed with trust, since securities augmented assets as whole."

"Where funds held by trust company are commingled with funds of trust company, and investments are made with commingled funds, which investments might lawfully be made by trust company with trust funds; presumption is that such investments were made with trust funds, and that securities so purchased come to trust company and remain in trust company impressed with trust to ex-

tent of amount of trust fund which may have been found to have been so commingled with funds of trustee."

"Where bank holds funds in trust, *cestui que* trust does not part with title, nor become bank's creditor, but receives property in fiduciary capacity only, and is bound to hold it sacred and keep it separate from funds of institution."

In Power, *et al.*, v. Amos, 94 Fla. 411, 114 Sou. 364, we held:

"The words, 'The State .Comptroller may forthwith designate and appoint a receiver to take charge of the assets and affairs of such bank' imply and mean that the receiver in his representative capacity takes title to the assets and affairs of the institution and the Comptroller has complete discretionary power over them, subject to the other provisions of the Act, and the 'affairs' of the bank include all business interests of the bank, including trust estates of every character lawfully held by the bank for which receiver is appointed and the receiver is charged with handling such trust matters in the same manner in which the original trustee was charged with handling such matters until such time as a substitute trustee may be duly appointed by a court of chancery having jurisdiction of the matter."

"The provision that 'Such receiver shall pay all money received by him to the State Treasurer to be held as a special deposit for the use and benefit of the creditors subject to the order of the Comptroller' will not be held to apply to monies received by the receiver as acting trustee, because this provision of the statute clearly applies to funds in which creditors of the defunct banking institution have an interest and such creditors can have no interest in funds accruing from trust estates held by the defunct bank in its trust capacity."

The holding in the case of Lee v. Johnson, 124 Fla. 314, 168 Sou. 398, is not in conflict with the opinions above cited. In that case we held:

"Moneys collected by bank for benefit of depositors under a 'freezing' agreement, pursuant to which the bank was allowed to reopen and do business, *held* to constitute a preferred claim against assets of bank in hands of liquidator appointed upon a second closing." (Comp. Gen. Laws 1927, Sec. 6108, as amended.)

The difference between the case of Lee v. Johnson and the case now under consideration is that in the case of Lee v. Johnson certain assets were taken out of the bank to be collected by a trustee for the benefit of the depositors as collections were made. When the bank reopened under the freezing agreement of September 13, 1926, Frank B. Cook was selected as trustee. He was succeeded in December, 1926, by J. L. Folsom, who assumed his trustee responsibilities and duties and collected through the bank various assets which were kept in the bank in an account styled "J. I. Folsom, Trustee." When the bank suspended business the second time, on September 21, 1932, Folsom filed a preferred claim with the Liquidator for the balance of $10,073.79, which was the amount of funds that had been collected, received and kept in the bank for the benefit of the freezing agreement depositors. The claim was rejected as a preferred claim and allowed as a general claim only. We held that it was entitled to the status of a preferred claim.

In the instant case the claim of the *cestui que* trust is a preferred claim in the sense that it is one which must be paid in preference to common claims when it is shown that the bank received the funds as Trustee and then commingled the fund with its funds as a banking institution,

but it does not follow that this was a debt of the bank. The bank in its trust capacity held the money in trust for the *cestui que* trust and did not occupy the position of a debtor to the *cestui que* trust.

As is seen from the opinions of this Court above cited, the Liquidator became upon taking over the affairs of the Bank & Trust Company Trustee in lieu of the bank and he was charged as Trustee and as Liquidator with full knowledge of the status of the fund.

In contemplation of law, the fund involved in this case was never deposited in the bank but was held by the bank as Trustee and it would be a vain and useless thing to require the Liquidator as Trustee *ex officio* to go through the performance of filing a claim, as Trustee, with himself as Liquidator. In the old case of Sanderson's Administrators v. Sanderson, 17 Fla. 820, it was said:

"If we understand the proposition of the respondent as to the statute of non-claim, it is to the effect that an administrator, with the estate in his hands for the purpose of administration, must present to himself or to the Probate Court, his claim against the estate within the time limited, or it will be barred like the claim of any other creditor. The proposition, that an administrator must prove his debt when he claims to retain out of the assets is correct, but the proposition that he must necessarily present and prove. his claim within two years, if the exigencies of the estate require his possession of the assets beyond that time, we cannot sanction. Under our statutes, except in insolvent estates, there is a right to retain. If a debt exists, we think his right to payment at least co-extensive with his right to retain, and this exists as a general rule so long as he has assets in his hands. It is a right incident to the possession of assets, as we understand it. This is the distinction be-

tween himself and other creditors, and his right to retain results from the fact that 'it were absurd and incongruous that he should sue himself, or that the same hand should at once pay and receive the same debt.' 6 Fla. 29; Williams on Ex., 6 Am. Ed., 1040, 1050, and cases cited; 53 N. H. 531; 8 Bush. 564; 24 Vt., 402." The case here is analogous to that.

In Bloxham v. Cram, 19 Fla. 163, it was held: "Statutes of non-claim and limitation can not be pleaded in bar to actions for trust funds.": See also Boone v. Alston, 8 Fla. 307. In Glidden v. Gutelius, *supra,* we held that once a fund has been impressed with a trust it never loses this status. See also Ft. Pierce Bank v. Sewall, 113 Fla. 811, 152 Sou. 617.

Under the allegations of the bill of complaint it is shown that when Stuart Bank & Trust Company closed the second time moneys had been collected by the Trustee, the bank in its trust capacity, and that fund had been impressed with the trust. It passed into the hands of Nobles as a trust fund and likewise passed on to Nobles' successor, Smith, as a trust fund.

So the orders appealed from should be and they are reversed with directions that the case be remanded for further proceedings not inconsistent with the views herein expressed.

ELLIS, C. J., and TERRELL, J., concur.

WHITFIELD, P. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.