BYRON J. WETHERBEE AND OTHERS v. ELLA R. CHASE, ADMINISTRATRIX.*

[In Chancery.]

*Will. Fraud. Court of Chancery, Jurisdiction of. R. L. s. 2049. Parties.*

1. When a testator devises his real estate to his heirs, and in the same will gives certain sums of money to persons who are not his heirs, making the payment of the legacy a charge on the land, it is a fraud for the heirs, by agreement exclusively between themselves, to procure the County Court to render a judgment disallowing the will,—the case being there an appeal from a decree of the Probate Court establishing the will,—and then to divide the estate solely among themselves, ignoring the rights of legatees to whom money had been willed, who were minors and unrepresented. And in such a case the Court of Chancery has jurisdiction, and, the land still being in the possession of the heir, has power to charge the legacy upon it, and this on the ground of fraud.

2. PARTIES. Only that heir is a proper party defendant who received the parcel of land burdened by the will with payment of the legacy.

BILL IN CHANCERY. Heard on bill, answer, and the report of a special master, September Term, 1883, ROYCE, Chancellor. Decree for the orators, that the legacy of $600.00 with interest is due to them, and that the payment of the same be made a charge upon lot of land held by Wait Chase's estate. The bill was originally brought only against said Wait Chase; but on petition, at said term of court, Peter Wetherbee, Abigail Wetherbee, and Hannah Chase, by a *pro forma* ruling of the chancellor, were also made parties defendant. Hannah Chase was the widow of the testator, Ichabod Chase; Wait Chase and Abigail Wetherbee were his children and only heirs; the three orators were his grandchildren, and the children of said Peter and Abigail. The defendant, Ella R. Chase, is the administra-

* Heard, January Term, 1884.

trix of the estate of Wait Chase deceased. That part of the will relating to Wait Chase was as follows:

"I give, devise, etc., unto my son, Wait Chase, and his heirs the mountain lot (so called) containing 87 acres of land, &c. * * * on the following conditions, to wit: that the said Wait Chase pay to the children of my daughter, Abigail Wetherbee, the sum of $600.00, to be divided in equal proportions among the children of my said daughter."

The bill alleged as to the settlement of the case in the County Court: "That the said agreement upon which said judgment was rendered, and the said judgment of said County Court, and the said agreement for the division of the estate of Ichabod Chase between said Hannah Chase, Wait Chase, and Abigail Wetherbee, were entered into, had, and consummated for the express purpose of depriving your orators, Byron J., Elbert J., and Luna D. Wetherbee, of said legacy of $600 given to them by said will," &c.

The prayer of the bill was, that the judgment of the County Court and the record thereof in the Probate Court be vacated; that said will "be decreed to be and to be allowed as the last will and testament of the said Ichabod Chase;" that the amount due the orators upon the legacy "may be decreed and adjudged to be a special lien and charge upon the said mountain lot," etc.

The master found in part:

"Whereupon, in conformity with such stipulation, judgment was entered by the court without trial at that term, that the order of the Probate Court proving and allowing said will be reversed and that said will be disapproved and disallowed, and that such judgment of the County Court be certified to the Probate Court, and it accordingly was duly certified to the Probate Court and therein recorded.

"On the same day that this stipulation was filed and in fulfilment of said agreement, Wait Chase, Abigail Wetherbee and her husband, and Hannah Chase made and delivered their respective conveyances and assignments to and between each other, dividing up the entire estate of Ichabod Chase among themselves, and Abigail Wetherbee and her husband, Peter C. Wetherbee, executed a discharge to the

estate of Ichabod Chase of certain claims they had made against it and which were pending before commissioners on said estate in consideration of the discharge of certain claims in offset thereto in favor of said estate, these mutual discharges being in part fulfilment of the agreement in regard to the division and settlement of said estate above mentioned.

"In such division, Wait Chase took absolutely the mountain lot, so called, of about 87 acres, which by said will was devised to him on condition that he pay to Abigail Wetherbee's children, who are the orators, the sum of $600; and after that time Wait Chase during his lifetime, and since then his administratrix, the defendant, have held and occupied that lot, claiming it as heir at law of Ichabod Chase and under such conveyances to him from Hannah Chase, the widow, and Abigail Wetherbee, the only other heir of Ichabod Chase, and not under said will. The value of said lot at the time the will was made was $600. It joined Wait Chase's farm.

"All the proceedings both in and out of court were had without the appointment or intervention of any guardian for the orators, who were then all minors, and neither of the orators nor the subsequently appointed guardian of said Luna D. ever consented to the same.

"Wait Chase believed and claimed that the will was invalid, and was unwilling to settle the controversy, unless he could obtain terms more advantageous to him than the provisions of the will. By the settlement he got better terms than under the will, in so far as he got rid of the charge upon his mountain lot of the $600 legacy to the orators; and this was substantially the only difference between his share under the will and under the settlement.

"In making the aforesaid agreement, stipulation, and disposition of said will case, and the division of the entire estate among themselves, the Wetherbees, Hannah Chase, and Wait Chase intended to have the will set aside without trial, and take all the estate to themselves.

"As this purpose could not be carried out without necessarily resulting in getting rid of whatever risk existed in the conflicting state of the evidence as to the testator's testamentary capacity, that the trial would result in establishing the will and consequently the orators' right to the legacy of $600, and as there was no evidence that they did not

understand that such was the necessary result of what they did, nor intend the natural consequence of their acts, the master finds that Hannah Chase, Wait Chase, and Abigail Wetherbee, and Peter Wetherbee, in making and carrying out this agreement and dividing the entire estate among themselves without regard to the will, intended to avoid whatever risk there was of the orators' rights to this legacy being established.

" But there was no evidence before the master bearing upon their purpose and intent in making and carrying out such agreement for the settlement of the will cause and the division of the estate except the papers themselves showing such agreement and the fact that the agreement was carried into effect.    *    *    *

" Whether the result of a trial of the will cause in the County Court would have been in favor of the will, the master is unable to find.   To the parties who made the agreement, stipulations, and division of the estate above mentioned that result was necessarily a matter of uncertainty.   And such uncertainty and the probability of a long and expensive trial operated to some extent in leading them to agree that the will should be set aside without trial and the estate settled as it was.   It appeared that Abigail Wetherbee shortly before the trial in the County Court was to come off went to Wait Chase and wanted to know if they could not settle that suit and have no further trouble about it; and this was the only proof in regard to any proposition for or negotiation about a settlement except the papers executed by the parties.

" From the conflicting evidence on the subject of the capacity of the testator to make the will submitted to the master, he finds proved by the balance of testimony that at the time of making said will Ichabod Chase was of sound mind and capable of making a will; and that the will is his last will and testament, and was duly executed."

*H. S. Royce* and *Daniel Roberts*, for the defendant.

Hannah Chase and Abigail Wetherbee should be made parties.   Barb. Par. 329, 456; 1 Dan. Ch. 339, 348; *Colt* v. *Larnier*, 3 Cow. 320; Story Eq. Pl. 236, 241; *Epps* v. *Van Dusen*, 4 Paige, 64; *Bailey* v. *Inglee*, 2 Paige, 278.

A decree setting aside that record, or enjoining the use of

it, necessarily sets aside the mutual settlement made, and leaves the question of the probate of the will open for determination in the Probate Court. If proved and allowed, all the parties must take according to the will, instead of in the way they have elected. You cannot set aside the record as to Wait Chase's estate, leaving it to stand as to the others, even though the orators might choose to single him out for attack. The claimed legacy, as a demonstrative legacy charged upon the mountain lot, imposed no obligation upon Wait Chase to pay it, unless he saw fit to accept the devise of the mountain lot, in which case the payment would have become a personal debt. 2 Red. Wills, 472; *Creed* v. *Creed*, 11 Cl. & Fin. 491; *ex parte Fuller*, 2 Story C. C. 327; *Glen* v. *Fisher*, 6 Johns. Ch. 33; 3 Wash. R. P. 460. The master does not find fraud; it cannot be inferred. 1 Story Eq. 190.

But the Court of Chancery has no jurisdiction to prevent the probate of a will, nor to set aside a will fraudulently procured, nor to take proof thereof though lost, destroyed, or suppressed. Perry Trusts, s. 182; 1 Story Eq. ss. 184, 440; *Gaines* v. *Chew*, 2 How. 619; *Paterson* v. *Gaines*, 6 How. 583.

No will can pass either real or personal estate, unless it is proved and allowed in the Probate Court,—R. L. s. 2049; and courts of equity are only ancillary to aid the Probate Courts. *Adams* v. *Adams*, 22 Vt. 58; *Boyden* v. *Ward*, 38 Vt. 628; *Bank* v. *Weeks*, 53 Vt. 115; *Merriam* v. *Hemmenway*, 26 Vt. 565. The cases in which, as claimed, proof of a will may be made in chancery, are cases of fraudulent suppression or spoliation. Here the will was not suppressed; but is now in the Probate Court. *See* 1 Story Eq. 212, 215; *Allen* v. *McPherson*, 5 Beav. 160; *Gaines* v. *Chew*, *supra*; *Armstrong* v. *Adm'r*, 12 Wheat. 169; *Tucker* v. *Phipps*, 3 Atk. 360; *Shumway* v. *Holbrook*, 1 Pick. 114; *Hall* v. *Gilbert*, 31 Wis. 691; *Lockwood* v. *Stockholm*, 11 Paige, 87; 13 Ves. Jr. 290; 7 Dana, 90; 8 Humph. 390; *Grant* v. *Grant*, 1 Sand. Ch. 235.

Chase, finding the devise too onerous, refused to accept it. By consequence, the mountain lot falls back into the general estate for administration. *Frederick* v. *Gray*, 10 Serg. & Raw. 182.

If a devise be rejected by the devisee, and there be no other disposition of the estate in the will, it will descend to the heirs at law. *Doe* v. *Smith*, 6 B. & C. 112; *Townson* v. *Tickell*, 3 B. & A. 31; *Kelsey* v. *Western*, 2 N. Y. 501.

*Geo. A. Ballard* and *Edson, Cross & Start*, for the orators.

The legacy given by the will to the orators is charged specifically upon the mountain lot. 2 Red. Wills, 209; 7 Paige, 421. The orators were minors, in no way represented in the County Court, and were not parties to the agreement by which the will was disallowed in that court.

Irrespective of the question as to the appropriate remedy, it would seem to be clear, that a legacy secured to minors by the will of their grandfather could not be effectually defeated without their consent, and against their protest, by any agreement of the grandfather's heirs, or any judgment rendered exclusively upon any such agreement.

The Court of Chancery has jurisdiction. It has taken jurisdiction in a case very similar to this one. *Mead et al.* v. *Langdon's heirs*, decided in Washington county in 1835, but not reported. This decision is approved by REDFIELD, Ch. J., in his work on Wills, 1 vol. p. 317.

The orators, not being parties to the judgment in the County Court, and the agreement and judgment being fraudulent and void as to them, it is insisted that Wait Chase took the mountain lot subject to the legacy charged upon it. The judgment, by agreement, ought not to have a broader scope than the agreement upon which it was based. It was effectual to fix the rights of the parties to the agreement as to their right under the will, but ineffectual to divest the orators of a legacy under a valid will charged upon specific real estate.

The opinion of the court was delivered by

TAFT, J. In May, 1872, Ichabod Chase made his last will. By it he devised to Wait Chase, his son, eighty-seven acres of land, on condition that he, the said Wait, paid to the orators, who were not his heirs, the sum of six hundred dollars. Wait Chase was named as executor. The will was allowed by the Probate Court, and an appeal taken to the County Court by said Wait. An agreement was entered into by the heirs of said Ichabod, by which the estate was divided among them; and by consent a judgment was entered in the County Court disallowing the will; and the judgment was certified to the Probate Court and therein recorded. The orators were minors at the time of the proceedings above recited, and were in nowise parties to the agreement. By the agreement, Wait Chase took the eighty-seven acres of land free from any encumbrance. The bill in this case is brought seeking to charge the said land, which is still owned by Wait Chase, with the payment of the six hundred dollars. The defendants insist, that equity has no jurisdiction for that purpose; that granting the relief prayed for would be, in effect, establishing a will, and in contravention of R. L. sec. 2049, providing that "no will shall pass either real or personal estate, unless it is proved and allowed in the Probate Court, or by appeal in the County or Supreme Court." It is said that the doctrine is settled, that a court of equity will not entertain jurisdiction to set aside a will obtained by fraud, or establish one suppressed by fraud; for, in such cases, the proper remedy is exclusively vested in the probate or ecclesiastical courts. Smith Man. Eq. 56; Story Eq. Jur. s. 184, *and note.* But it is also as well settled, that "where the fraud does not go to the whole will, but only to some particular clause, courts of equity will lay hold of the circumstance to declare the executor a trustee for the legatee." Story Eq. Jur. s. 440; Smith Man. Eq. 57; Mitf. Eq. Pl. 257; 1 Perry Trusts, s. 183. It is insisted, and we think correctly, that the reason why

a court of equity has no jurisdiction, either to establish, or set aside a will, is, that those questions are within the exclusive jurisdiction of the Probate Courts; but that reason does not extend to the case at bar. The proceedings in this cause do not seek to establish the will of Ichabod Chase; but to charge upon the land in question the legacy given the orators, of which they have been deprived by the fraud of the defendant Wait. To make the payment of the legacy a charge upon the land, without reference to establishing the will, the Probate Court has no power whatever. The case, therefore, falls within the general rule that courts of equity have jurisdiction in all matters of fraud.

All the heirs of the testator were parties to the agreement; his garments were parted among them. The orators complain of the nullification of the particular clause giving them a legacy. The action of Wait Chase and his co-heirs effectively suppressed the will; in no way or manner can the orators apply to the Probate Court for proof of it. That court has on record the certificate of the County Court that the will has been disallowed; there is no remedy for the orators in the law courts. They have been deprived of it by the act of Wait Chase himself; and he is not now to be heard to say that they once had a remedy at law. A court of equity might as well be abolished, if under such circumstances it could grant no relief. The orators are not seeking the establishment of the will and the settlement of the testator's estate under it; they only ask payment of the legacy given them, and of which they have been deprived by the act of Wait Chase and his co-heirs. We think for this purpose that a court of equity has jurisdiction. This case may well be governed by that of *Mead et al.* v. *Langdon's Heirs*, cited in *Adams* v. *Adams*, 22 Vt. 59, where this court set up and decreed payment of legacies, given in a will never proved in the Probate Court, but which had been suppressed by those interested in the estate, and administration grant-

ed without regard to the will. *See*, also, 2 Red. Wills, 8; and Story Eq. Jur. s. 98, *n.* 1, and s. 254.

Sec. 2049, R. L., which, the defendants insist, bars the relief sought by the orators, does not, we think, have that effect. It was not intended to prevent a court of equity taking cognizance of a cause within its jurisdiction, and granting suitable relief. As between the parties to this cause, the will may well be considered as proved in the Probate Court, and the appeal vitiated by the fraud of Wait Chase. The orators' title to the legacy or the land is by virtue of the decree of the Court of Chancery, not by virtue of the will. The effect of the decree below was not to establish the will; and the persons made defendants by the order of the chancellor are not proper parties to this proceeding; and the *pro forma* decree making them such is reversed. As to them, the bill should be dismissed; in all other respects the decree is affirmed and the cause remanded.