THE DOMESTIC AND FOREIGN MISSIONARY SO-
CIETY, PROTESTANT EPISCOPAL CHURCH
IN THE UNITED STATES OF AMERICA
ET ALS., APTS.,

v.

ISAAC L. EELLS, A. ELIZABETH SPERRY ET AL.

JANUARY TERM, 1896.

*Will.    Chancery no power to probate.    May act in aid
of Probate Court.*

1.  Equity has no jurisdiction to establish a suppressed, destroyed
or spoliated will, for by our present statutes the probate
court has exclusive jurisdiction of the probate of wills.

2.  Equity had such power at common law and in Vermont
until taken away by legislative enactment.

3.  The court of chancery may still act in aid of the probate court
as by preserving the property by injunction pending the
proceedings to probate.

4.  But the fact that resort is had to that court for temporary or
ancillary relief gives it no jurisdiction over the probate of
the will.

Bill in equity.    Heard upon the demurrer of the defend-
ants at the June term, 1895, Addison county.    Ross,
Chancellor, sustained the demurrer *pro forma*.    The orators
appeal.

*C. M. Wilds* and *W. H. Bliss* for the orator.

Chancery has jurisdiction to establish destroyed or sup-

33

pressed wills.   1 Story Eq., s. 254; Thornton Lost Wills, 42–43; 3 Red., Wills, 16; 1 Perry Trusts, s. 183; *Marquis of Winchester's case*, Coke, part 6, p. 22, K. B.; *Netter v. Brett*, Cro. Car. 395; *Buchanan v. Matlock*, 8 Humph. 390; *Hubergham v. Vincent*, 2 Veasey 204, 209; *Marriot v. Marriot*, Gilb. Eq. Cas. 203; *Etheringham v. Etheringham*, Aleyn 2; *Hamden v. Hamden*, 3 Bro. P. C. 550; *Dalston v. Coatsworth*, 1 P. W. 731; *Tucker v. Phipps*, 3 Atk. 359: *Anderson v. Irwin*, 101 Ill. 411; *Bailey v. Stiles*, 1 Green's Ch. 220; *Hall v. Allen*, 31 Wis. 691; *Harris v. Tisereau*, 52 Ga. 153; *Slade v. Street*, 27 Ga. 17; *Banks v. Booth*, 6 Munf. 385; *Brant v. Dold*, Gilmer 211; *Dower v. Seeds*, 28 W. Va. 113; *Sparhawk v. Buel*, 9 Vt. 41; *Morse v. Slason*, 13 Vt. 296; *Wetherbee v. Chase*, 57 Vt. 347.

If a party is obliged to resort to chancery for one remedy the case will be retained until the whole matter is disposed of.   *Dana v. Nelson*, 1 Aik. 252; *Beardsley v. Knight*, 10 Vt. 185; *Holmes v. Holmes*, 36 Vt. 525.

*J. C. Baker* and *Seneca Haselton* for the defendants.

The probate court has exclusive jurisdiction over the probate of wills, and this extends to a spoliated will.   V. S., s. 2325; *Dudley v. Wardner's Executors*, 41 Vt. 59; *Morningstar v. Selby*, 15 Ohio, 345; *Gaines v. Chew*, 2 How. 619.

The court of chancery cannot be invested with the power to probate wills by resorting to it for some ancillary relief. *Blair v. Heirs of Johnson*, 64 Vt. 598; *Ward v. The Church*, 66 Vt. 490.

THOMPSON, J.   The orators claim to maintain this bill in chancery as legatees and devisees under an alleged last will and testament of Lydia E. Conroe, deceased, which it is charged was fraudulently destroyed in her life time by the defendant, Isaac L. Eells.

After the decease of Conroe, the orators, the wardens and vestrymen of the First Episcopal Society of Addison county, presented the alleged will for probate to the probate court for the district of Addison, in which district she resided at the time of her death, and probate thereof was refused. From this decision an appeal was taken by the proponents to the county court, and the question of the probate of the will is still pending therein.

The orators have no standing in court if Lydia E. Conroe died intestate. If they have any title to any part of her estate, personal or real, it is derived through her last will. If she left no will, the possession of the property alleged to belong to her estate by defendants Eells and Sperry, is sufficient title to enable them to hold the same as against the orators, who, in that event, would be mere strangers and intermeddlers as to her estate. Hence, at the outset, the orators must establish that Conroe died testate, and must establish the contents of the will so far as they claim the same constitutes them devisees and legatees thereunder.

Defendants Eells and Sperry by demurrer, have raised the question whether in this state, the court of chancery has jurisdiction to establish spoliated, suppressed and destroyed wills.

Chapter 2, Art. 5 of the Constitution of Vermont, so far as it relates to this question, is as follows:

"A future legislature may, when they shall conceive the same to be expedient and necessary, erect a court of chancery, with such powers as are usually exercised by that court, or shall appear for the interest of the commonwealth."

This article of the constitution was adopted in 1786 and has since been retained. It was thus left with the legislature to determine the powers and jurisdiction of such court when created. They might be the same as were possessed at that time by the court of chancery in England, or they might be modified as in the judgment of the legislature, the best interest of the state might require. Under this grant of

power, a court of chancery was created by the legislature as early as 1788, St. 1788, p. 10.

From that time to the present, the powers of that court as defined by statute, have been substantially as now declared by Vt. St.. s. 907, which section reads :

"There shall be a court of chancery, the powers of which shall be vested in a chancellor ; and the powers and jurisdiction shall be the same as those of the court of chancery in England, except as modified by the constitution and laws of this state."

It is necessary to consider whether at the time of the adoption of this provision of the constitution, the court of chancery in England had jurisdiction to set up spoliated, suppressed and destroyed wills. At that time there was no way in England by which a will devising real estate, could be established and probated once for all. It was considered as a muniment of title, and was required to be proven whenever necessary to establish title, and might be attacked whenever offered in evidence before a court. The ecclesiastical courts had jurisdiction over wills of personalty. Probate of such wills, against the world, and once for all, could be made in them. If the will was of personalty and realty, the ecclesiastical court could probate it, but the probate was not noticed by the common law courts. in respect to the realty. If the devisee was in possession, he could not maintain ejectment against the heir and thus establish his title under the will. To obviate this dilemma courts of chancery entertained a bill in favor of such devisee against the heir to establish the will and title thereunder. This was in the nature of a bill to quiet title. 3 Pom. Eq. s. 1158 and note 3 ; Adams. Eq. 6th Am. ed. with Sharswood's notes, *248, *249 and notes ; *Buchanan* v. *Matlock*, 8 Humph. 390, 47 Am. Dec. 622 ; *Harris* v. *Tisercau*, 52 Ga. 153, 21 Am. Rep. 242.

There are cases where chancery formerly exercised jurisdiction to relieve against a will fraudulently obtained. But

since the decision of *Kenrick* v. *Bransby*, 3 Brown's P. C.
358, and *Webb* v. *Cleverden*, 2 Atkyns 424, it seems to be con-
sidered as settled in England, that equity will not set aside a
will for fraud and imposition. The reason assigned, is where
personal estate is disposed of by a fraudulent will relief may
be had in the ecclesiastical court; and at law, on a devise
of real property. *Bennet* v. *Vade*, 2 Atkyns 324; 3 Atkyns
17; *Jones* v. *Jones*, 3 Merivale 171. In *Gaines* v. *Chew*,
2 How. U. S. 620, Law ed. 11 Book 402, Justice McLean
on this subject said:

"In cases of fraud, equity has a concurrent jurisdiction
with the court of law, but in regard to a will charged to have
been obtained through fraud, this rule does not hold. It
may be difficult to assign any very satisfactory reason for
this exception. That exclusive jurisdiction over the probate
of wills is vested in another tribunal, is the only one that can
be given."

*Keiley* v. *McGlynn*, 21 Wall. 503; 3 Pom. Eq. ss. 913,
914. There are not many English cases bearing directly
upon the question of the jurisdiction of chancery to set up a
suppressed, spoliated or destroyed will. *Haines* v. *Haines*,
2 Vernon, 441, was decided in 1702. That case was this:
The uncle having devised his real estate, part to the orator
and part to other relatives, and disinherited the heir at law;
at the funeral of the uncle, a younger brother of the heir at
law, snatched the will out of the hands of the executor and
tore it into many small pieces, and most of them, particu-
larly such part wherein was the devise of the land, were
picked up and stitched together again. The bill was to
have the will established; and it was decreed that the devisees
should hold and enjoy against the heir, and he to convey to
the devisees, although no direct proof was made that the
heir directed the tearing of the will. The report of the case
does not show that it was argued, and no reasons are given
by the court for its judgment. This case is quite analagous
to the class of cases before suggested in which the devisee

in possession could maintain a bill against the heir at law to set up the will to quiet his title. *Hampden* v. *Hampden*, 3 Bro. P. C. 550, was first heard and decreed by the master of the rolls in December, 1708, then affirmed by the lord chancellor on appeal, and afterwards by the house of lords in 1723. In *Dalston* v. *Coatsworth*, 1 Pere Williams, 731, *Hampden* v. *Hampden* is stated thus : The orator claimed as devisee under the will of the defendant's father ; by proof it appeared there was such a will, though no exact account was given of its contents; but inasmuch as the court was satisfied the defendant had suppressed the will, and for that, though no exact proof was made of its contents, the defendant might clear this by producing the will; therefore it was decreed that the orator, the devisee, should hold and enjoy until the defendant produced the will and further order. In 1719 was decided in chancery, the case of *Woodruff and Burton*, which is stated in *Dalston* v. *Coatsworth, supra*, as follows :

"A devisee brought his bill against the heir, and it being made to appear that there was such a will as the plaintiff had suggested, and that the defendant had destroyed it, the Lord Chancellor Parker decreed the defendant to convey the premises to the plaintiff in fee, and to deliver up the possession, which (his honor said) seemed to him to be the most effectual and reasonable decree."

*Tucker* v. *Phipps*, 3 Atkyns 359, was decided in 1746. The bill in that case was brought by the plaintiff, suggesting that his wife's father had by his will left a legacy of fifteen hundred pounds to the plaintiff's wife, his daughter, and that the defendant had destroyed or concealed the will. The prayer was that the defendant be decreed to pay the plaintiff fifteen hundred pounds with interest. The defendant put in three answers ; in the first he admitted the will as set forth in the bill, but made no mention of any insanity in the testator ; in the third he denied he ever had any such will, and averred that if there ever was any such, he could

not say whether his father was of sound mind at the time of making such will, and insisted that the plaintiff came too soon into chancery for that he ought to have cited the defendant into the ecclesiastical courts, where he might equally well have had the benefit of a discovery. Lord Chancellor Hardwick in passing upon the case said :

"As to *the spoliation*, consider it generally as a personal legacy, where the will is destroyed or concealed by the executor, and, I think, in such case, if the spoliation is proved plainly, though the general rule is to cite the executor into the ecclesiastical court, the legatee may properly come here for a decree upon the head of spoliation and suppression. * * * * * But here the case is stronger to entitle the plaintiff to a decree because the legacy is out of real and personal estate both, and as to the real estate, there is no occasion to prove the will in a spiritual court to entitle the legatee to recover the legacy out of the real estate. This would be clearly the case, where the charge is upon the real estate, and though the heir is entitled to have a personal estate to exonerate his real, yet, if he is made executor and has by a voluntary, fraudulent act, put the legatee under such difficulties as to make it almost impossible for him to prove the will, it is reasonable to let in the legatee to have his legacy, and leave the executor to pay himself out of the personal estate."

And the plaintiff had a decree for the immediate payment of the legacy, notwithstanding the probate of the will had not been granted. Among cases in the United States holding that chancery has jurisdiction in such cases are *Bailey* v. *Stiles*, 1 Green, Ch. (N. J.), 220; *Buchanan* v. *Matlock*, and *Harris* v. *Tisereau*, *supra; Dower* v. *Seeds*, 28 W. Va. 113; *Anderson* v. *Irwin*, 101 Ill. 411; *Hall* v. *Allen*, 31 Wis. 691; *Banks* v. *Booth*, 6 Munf. 385; *Brant* v. *Dold*, Gilmer, 211. Among text writers adopting this view are 3 Redf. Wills 16; Perry Tr. s. 183; 1 Story Eq. s. 254. In the case of *Mead* v. *Langdon*, not reported but decided in Washington county in 1834, and cited in *Adams* v. *Adams*. 22 Vt. 59, this court set up and decreed the pay-

ment of legacies, given in a will never proved in a probate court, but which had been suppressed by those interested in the estate and administration obtained without regard to the will.    We think that at the time of the adoption of Art. 5, Ch. 2 of our constitution and the establishing of a court of chancery by the legislature the court of chancery in England had jurisdiction to · set up spoliated, suppressed and destroyed wills, and that the same jurisdiction is possessed by our court of chancery unless it has been modified or taken away by statute.

Has this jurisdiction been taken from the court of chancery by the legislation of this state?    At an early date in its history probate courts were established and have ever since been retained.    They are courts of record.    Vt. St., s. 2322. They have jurisdiction of probate of wills disposing of personal or real estate or of both, of the settlement of estates, the appointment of ,guardians, and the powers, duties and rights of guardians and wards, of the issuing of letters testamentary, and the appointment of adminstrators and of issuing letters of administration.    Vt. St., ss. 2325, 2371, 2372, 2373.    The probate of a will by the probate court having jurisdiction thereof, upon due notice, is conclusive as to its due execution as against the whole world.    Vt. St., s. 2356; *Foster's Exrs.* v. *Dickerson*, 64 Vt. 233.    The probate court has jurisdiction to probate lost, suppressed, spoliated and destroyed wills.    *Minkler* v. *Estate of Minkler*, 14 Vt. 125; *Dudley* v. *Wardner's Estate*, 41 Vt. 59, 84 Am. Dec. 628, note; Schouler's Exrs. s. 84.    It has power to vacate its decree admitting a will to probate.    It may thus revise its proceedings for fraud, mistake or illegality. *Hotchkiss* v. *Ladd's Estate*, 62 Vt. 209; *Smith* v. *Rix*, 9 Vt. 240; *Adams* v. *Adams*, 21 Vt. 162; *French* v. *Winsor*, 24 Vt. 407; *Waters* v. *Stickney*, 12 Allen 1; 3 Redf. Wills, pp. 56, 64, 123, 124; Perry Tr. 182.    With this power, there would seem to be no necessity for resorting to chan-

cery to establish rights to property under a will fraudulently spoliated or destroyed, or fraudulently set up or suppressed, by decree of the probate court or otherwise. The probate court has full jurisdiction in respect to the settlement and allowance of accounts of executors and administrators, of the allowance of claims at law against the decedent's estate, and of the marshalling and distributing the assets thereof. It has also an extensive chancery jurisdiction, by which claims, in some respects of purely equitable cognizance, may be there adjusted. *Adams* v. *Adams*, 22 Vt. 59. But it does not follow that because jurisdiction to probate all kinds of wills has been granted to probate courts, that courts of chancery have been deprived thereby of a concurrent jurisdiction to establish a will like the one in question. The rule in such case as stated in 3 Pom. Eq. s. 1153, is this :

"One fundamental principle should be constantly kept in mind ; it underlies all particular rules, and furnishes the solution for most of the special questions which can arise. In all those states which have adopted the entire system of equity jurisprudence, whatever be the legislation concerning the powers and functions of the probate courts, and whatever be the nature and extent of the subjects committed to their cognizance, the original equitable jurisdiction over administrations does and must still exist, except so far and with respect to such particulars as it has been abrogated by express prohibitory, *negative* language of the statutes, or by necessary implication from *affirmative* language conferring exclusive powers upon the probate tribunals. This equitable jurisdiction may be dormant, but, except so far as thus destroyed by statute, it must continue to exist, concurrent with that held by the courts of probate, ready to be exercised whenever occasion may require or render it expedient."

When exclusive jurisdiction is conferred upon probate courts in respect to wills and the probate thereof, chancery has no jurisdiction to establish and carry into effect a destroyed, suppressed or spoliated will. *Gaines* v. *Chew*, 2 How. (U. S.) 619, Law ed. 11 Book 402 ; *Keiley* v. *McGlynn*. 21 Wall. 503, Law ed. 22 Book 599. And it seems to be now

the settled law in England, that the court of chancery will not entertain jurisdiction of questions in relation to the probate or the validity of a will which the ecclesiastical or probate court is competent to adjudicate. *Keiley* v. *McGlynn*, *supra*.

Vt. St., s. 2356, is as follows :

"No will shall pass either real or personal estate, unless it is proved and allowed in the probate court, or by appeal in the county or supreme court; and the probate of a will of real or personal estate shall be conclusive as to its due execution."

This section was enacted subsequent to the decision of *Mead* v. *Langdon, supra*, in the revision of 1839, and has ever since been retained in all subsequent revisions. R. S. Chap. 45, s. 20, Vt. St., s. 2355 provides that attested copies of wills devising real estate and of the probate thereof, shall be recorded in the office of the clerk of the town in which the land lies. Vt. St., ss. 2365, 2369, provide for probate by probate courts, of wills made out of the state pursuant to the laws of the state or country in which they were made, and of wills allowed in any other of the United States or in a foreign country according to the laws of such state or country.

The case of *Morningstar* v. *Selby*, 15 Ohio 345, 45 Am. Dec. 579, was a bill in chancery to establish a spoliated will, and the question adjudicated was whether chancery under the Ohio probate system, had jurisdiction to establish such a will. The fifth section of the constitution of Ohio, provided that the court of common pleas in each county, should have jurisdiction of all probate and testamentary matters, granting administration, the appointment of guardians and such other cases as should be prescribed by law. Sec. 4 of the act to organize the judicial courts had this provision :

"The court of common pleas shall have power to examine and take the proof of wills, grant letters testamentary, etc., and to hear and determine all causes of probate and testamentary nature."

The Supreme Court of Ohio in that case held that chancery had no jurisdiction in respect to establishing such a will.

It said, referring to the court of common pleas as a probate court :

"The act relating to wills still keeps up and sustains the same separation of jurisdictions.   The probate is of the original jurisdiction of that court, and so recognized by the act in which the proof is prescribed, the mode of proceeding, and the effect of the record.   And in Swan's Stat., s. 33 p. 996, it is declared, that 'no will shall be effectual to pass real or personal estate, unless it shall have been duly admitted to probate, etc., as provided by the act.'   The act makes no mention of any method of establishing a will by chancery proceeding.   The probate is treated as a judicial act at law, binding upon all parties, and final and conclusive upon all parties.   *   *   *   *   To test the propriety of encroaching, in any manner, upon a jurisdiction so peculiar, and which from its nature, ought to be exclusive, let us anticipate some of the difficulties that might flow from entertaining this bill.   A decree in chancery is not the probate of a will.   Hence, a decree establishing a will cannot operate to give it vitality and is utterly powerless, or else the thirty-third section of the statute relating to wills must be taken and held, *pro tanto*, repealed by the decree. The decree and the statute would speak different language upon the same subject.   One would say, the will of Morningstar is effectual to pass real and personal property, without admission to probate, as the act provides ; the other, that it is of no effect.  The conflict is irreconcilable, and the weaker in the contest must give way.   Again, what would be the effect, if, after rendering a decree either for or against the validity of the supposed lost will, a real and different will should be produced?   Is the litigation a bar to its probate?   Does it oust the court of common pleas of jurisdiction?   Might not the will then be called for, be produced, be proved, and admitted of record, and would it not be effectual to vest titles according to the devises and bequests of the testator?   We think it would, because the chancery proceeding would be regarded wholly *coram non judice* and void, and because the statute would enforce its production, and is express as to the effect of the probate."

The decision of this case turned on the provision of the law of Ohio like Vt. St., s. 2356.

The jurisdiction of chancery in the settlement of estates

under our system of probate courts has been frequently passed
upon by this court.    One of the recent decisions on that sub-
ject is *Blair* v. *Johnson*, 64 Vt. 598, in which case the ora-
tor brought a bill for the construction of a will.    The prayer
of the will was denied by this court on two grounds, one of
which was that no occasion had arisen or was likely to arise,
requiring a construction of the will, assuming it to be doubt-
ful.    The other ground is stated in the opinion of the court
by Rowell, J., thus :

"But there is another point, not much touched on in that
case, (*Morse* v. *Lyman*, 64 Vt. 167), that is involved in this
class of cases.    In respect of the settlement of estates of de-
ceased persons, the jurisdiction of the court of chancery in
this state is not original, nor concurrent with that of the pro-
bate court, but is special and limited, and only in aid of the
probate court when its powers are inadequate.    Further than
that, the court of chancery has nothing to do with the settle-
ment of such estates.    It follows, therefore, that if at the
time a question as to the construction of a will needs to be
decided the probate court can be resorted to, and its jurisdic-
tion is adequate for the purpose, that court must be resorted
to, and chancery cannot be.    It may be that this point has not
always been kept in mind by our courts, but it is the inevit-
able deduction from our decisions.

To the same effect are *McCollum* v. *Hinckley*, 9 Vt. 143 ;
*Morse* v. *Slason*, 13 Vt. 296 ; *Adams* v. *Adams*, 22 Vt. 50 ;
*French* v. *Winsor*, 24 Vt. 402 ; *Merriam* v. *Heminway*, 26
Vt. 565 ; *Boyden* v. *Ward*, 38 Vt. 630 ; *National Bank* v.
*Weeks*, 53 Vt. 115 ; *Angus* v. *Robinson*, 62 Vt. 60 ; *Morse*
v. *Lyman*, 64 Vt. 167 ; *Brown* v. *Brown*, 66 Vt. 81 ;
*Ward* v. *Congregational Church*, 66 Vt. 490 ; *Davis* v.
*Eastman*, 66 Vt. 651.

It is said that *Wetherbee* v. *Chase*, 57 Vt. 347, supports
the contention of the orators that equity has jurisdiction to
establish the will in question.    That case was this : Ichabod
Chase, by his last will devised to his son, Wait Chase,
eighty-seven acres of land upon condition that he pay to the
orators, the testator's infant grandchildren, who were not his

heirs, six hundred dollars, to be equally divided among them. Wait Chase was named as executor in the will.    It was allowed by the probate court, and he took an appeal from the decision allowing it, to the county court.    An agreement was then entered into by the heirs and widow of Ichabod, by which the estate was divided among them, by mutual conveyances to each other.    In such division Wait Chase took absolutely the eighty-seven acres of land upon which the legacy to the orators was charged.    By consent a judgment was entered in the county court disallowing the will, which judgment was certified to the probate court and there recorded. At the time of these proceedings, the orators were minors, without the appointment or intervention of any guardian, and in nowise parties to the agreement.    The bill was brought to charge the land still owned by Wait Chase, with the payment of the six hundred dollars to the orators.    It was originally brought against him alone, but by a *pro forma* ruling of the chancellor, the other heirs and the widow were made parties defendant.    Decree was that the legacy of six hundred dollars with interest was due the orators, and that the payment of the same be made a charge upon the land.    In passing upon the case, this court by Taft, J., said :

"It is said that the doctrine is settled, that a court of equity will not entertain jurisdiction to set aside a will obtained by fraud, or establish one suppressed by fraud ; for, in such cases, the proper remedy is exclusively vested in the probate or ecclesiastical courts.    Smith Man. Eq. 57 ; Story Eq. Jur. s. 184 and note.    But it is also as well settled, that 'where fraud does not go to the whole will, but only to some particular clause, courts of equity will lay hold of the circumstances to declare the executor trustee for the legatee.' Story Eq. Jur. s. 440 ; Smith Man. 57 ; Mitf. Eq. Pl. 257 ; 1 Perry Tr. s. 183.    It is insisted, and we think correctly, that the reason why a court of equity has no jurisdiction, either to establish, or set aside a will, is, that those questions are within the exclusive jurisdiction of the probate courts ; but that reason does not extend to the case at bar.    The proceedings in this cause do not seek to establish the will

of Ichabod Chase but to charge upon the land in question the legacy given the orators, of which they have been deprived by the fraud of the defendant Wait. To make the payment of the legacy a charge upon the land, without reference to establishing the will, the probate court has no power whatever. The case, therefore, falls within the general rule that courts of equity have jurisdiction in all matters of fraud.    *    *    *    *    As between the parties to this cause, the will may well be considered as proved in the probate court, and the appeal vitiated by the fraud of Wait Chase. The orators' title to the legacy or the land is by virtue of the decree of the court of Chancery, not by virtue of the will. The effect of the decree below was not to establish the will ; and the persons made defendants by order of the chancellor are not proper parties to this proceeding ; and the *pro forma* decree making them such is reversed. As to them the bill should be dismissed ; in all other respects the decree is affirmed and the cause remanded."

It may be difficult to reconcile this case with the adjudged cases or other authorities bearing upon the subject. The county court as the appellate probate court, had ample power to set aside the disallowance of the will, and on proper proof to allow it, thus establishing the legacy charged upon the land. The judgment disallowing the will though obtained by fraud as against the orators in that case, was a valid judgment of a court of competent jurisdiction, and binding, until set aside by proper proceedings, in that court, or in some court having jurisdiction to set it aside, yet the decree for the orators was rendered without setting it aside. The difficulty is not met by saying that the judgment of the probate court might well be treated as in force and the appeal vacated by the fraud, because the appeal was in fact perfected, the judgment of the probate court vacated, and the judgment of the county court rendered disallowing the will. Neither the probate court nor the court of chancery had any power to establish the legacy except by force of the will. If there was not a valid will, there was no legacy and no fraud, and nothing to give either

court jurisdiction in respect to the legacy.    The alleged
fraud was not of the character in which executors have been
declared trustees for the legatees, under a will properly
proved and allow,ed, and the decision does not finally go on
that ground.    *Allen* v. *McPherson*, 1 Phil. Ch. Cas. 133, af-
firmed in 1 H. L. Cas. 191; *Keiley* v. *McGlynn*, *supra.*
In *Allen* v. *McPherson* it was claimed that a final codicil
to the will in question, which revoked certain provisions in
the will favorable to the orator, and which was established
by the ecclesiastical court, was obtained by the fraud of the
defendant.    A demurrer to the bill having been sustained
and the bill dismissed, the case went to the House of Lords
on appeal; and the whole discussion turned upon the ques-
tion whether or not the ecclesiastical court had jurisdiction
to inquire into the matters of fraud alleged; and the court
being of the opinion that it had jurisdiction, the decree was
affirmed.    Lord Lyndhurst also reviewed the cases in which
a legatee or executor had been declared a trustee for other
persons, and came to the conclusion that they had been
either questions of construction, or cases in which the party
had been named a trustee, or had engaged to take as such,
or in which the probate court could afford no adequate or
proper remedy.    The effect of his reasoning was, that
where a remedy is within the power of the ecclesiastical
court, either by granting or refusing probate of the whole
will or codicil, or of any portion thereof, a court of equity
will not interfere.    And this was a view of a majority of
the law lords on that occasion, Lords Brougham and Camp-
bell agreeing with Lord Lyndhurst.    This seems to be now
the settled rule in England.    In the case of a foreign will,
it was held by the United States Supreme Court in *Arm-
strong* v. *Lear*, 12 Wheat. 170, that a bill in equity could
not be maintained against the personal representative of the
alleged testator, for a legacy, until the will had been admit-
ted to probate by the court in this country, having jurisdic-

tion of the probate of wills and other testamentary matters. The division of the estate of Ichabod Chase by the heirs and widow, would in nowise have affected the jurisdictions of the probate court over the same, if the will had been established in that court.

But whatever may be thought of the law or the logic of the decision in *Wetherbee* v. *Chase*, it explicitly declares that it does not establish the will, and that a court of equity in this state has no jurisdiction to establish or set aside a will, and that such jurisdiction is exclusively within the jurisdiction of the probate courts. Hence, it is not an authority for the orators in the case at bar.

The question as to the effect of R. L., s. 2049, which is the same as Vt. St., s. 2356, was before this court in *Walton*, *Admx.*, v. *Hall's Est.*, 66 Vt. 455. The will of John Walton had been legally probated in Illinois but not here, the administration there being ancillary. In passing upon the effect of the will here, the court by Rowell, J., said:

"We have no statute allowing that probate to make the will effective to pass property having its situs here; but on the contrary our statute provides that no will shall pass either real or personal estate unless it is proved and allowed in the probate court or on appeal in the county or supreme courts, R. L., s. 2049. This, of course, refers to property located here. It follows, therefore, the will not having been proved and allowed here, that it cannot pass property located here."

The probate court, and the county court as an appellate probate court, have ample jurisdiction for establishing spoliated, suppressed and destroyed wills. It logically follows from the express provisions of Vt. St., s. 2356, our probate laws, and our decisions, as well as the decisions of other courts, American and English, that the jurisdiction of chancery to establish such wills is abrogated, and we so hold. To hold otherwise, would in effect repeal Vt. St., s. 2356, and would contravene the decisions of this court in respect to the exclusive jurisdiction of the probate courts. It is ap-

parent, in view of the fact that this section was enacted subsequent to the decision in *Mead* v. *Langdon*, *supra*, that it was intended to confer exclusive jurisdiction over the proof and allowance of wills, upon the probate courts, and thus by way of appeal to the county court, secure to all persons interested, the right of trial by jury of all issues of fact involved in the probate of a will, Vt. St., ss. 2584-2595. Our probate system is thus made harmonious, and in accord with the spirit of the common law, which regarded wills as muniments of title, and to be established as such. The enactment of that section in the revision of 1839, overruled *Mead* v. *Langdon*.

The defendants, Eells and Sperry, claim title to the property in question by virtue of a certain conveyance and transfers of the same to them by Conroe in her life, and the orators claim title thereto under the alleged spoliated will.

Hence, the issue pending between the parties in the county court, though in form the question of the probate of the will, is in fact, so far as the orators are concerned, a question of title. The case standing thus, jurisdiction is not conferred upon the court of chancery to establish the will, because the orators' bill prays for an injunction or for equitable relief, other than the setting up of the will. The case is analogous in principle to *Griffith* v. *Hillard*, 64 Vt. 643, and *Stetson* v. *Stevens*, 64 Vt. 649, in which the title of the orator was involved, and which the court of chancery refused to determine, although a temporary injunction was granted, and remitted him to the court of law to establish his title. In view of the effect of Vt. St., s. 2356, chancery cannot draw to itself jurisdiction to set up a will by granting some other equitable aid. It can only supplement where there is a shortage in the powers of the probate court to protect the rights of the parties, by supplying such shortage if it comes within the scope of equity, and no more.

In a cause like this, the court of chancery may, in its dis-

cretion and for sufficient cause shown, issue a temporary injunction to prevent any disposition of the property in controversy, and may make such further orders as may be necessary to preserve the same, and continue such injunction and orders in force for such reasonable time as may be necessary to enable the orators to establish the will in the county court. If the will is there proved and allowed, such allowance does not necessarily establish the right of the orators to the property, as Conroe may have been competent to contract at the time she executed the conveyance and transfers to Eells and Sperry, although not of sound mind at the time of the alleged destruction of her will. If the will is established, letters testementary or of administration issued, and the estate settled in due course in the probate court, it may be found that the powers of the probate court are inadquate to give the orators such relief as they may be entitled to have to make good their title under the will and relieve it from any cloud that defendants Eells and Sperry may have cast upon it, by any unlawful act of theirs. In such event chancery may, upon proof of the probate of the will in the county court, proceed with the cause in aid of the probate court, and grant such relief as the orators may establish that they are entitled to, which the jurisdiction of the probate court is inadequate to give. To this end the cause may be retained by the court of chancery. *Griffith* v. *Hillard,* and *Stetson* v. *Stevens, snpra; French* v. *Winsor,* 24 Vt. 402 ; 32 Atkyns 17.

This view of the case renders it unnecessary to pass upon the effect of the orators having elected to proceed in the probate court for the proof and allowance of the alleged will and the pendency of such proceedings in the county court on appeal.

*The pro forma decree of the court of chancery is reversed; the demurrer contained in the answer of the defend-*

ants, *Isaac L. Eells and A. Elizabeth Sperry, is overruled, and the orators' bill adjudged sufficient; and the answer of defendants, Eells and Sperry is ordered brought forward, from which and the orators' bill, it appears that the proof and allowance of the alleged last will and testament of Lydia E. Conroe, deceased, late of Middlebury, in the county of Addison, and under which will the orators claim title, is in controversy; therefore the cause is remanded to the court of chancery, with direction to that court to retain the case, and to make such further temporary orders as may be necessary to preserve the property in controversy, and to continue such orders and the injunction for such time as, in the opinion of said court, may be necessary to enable the orators to prove and establish said will in the county court where proceedings for the probate thereof are now pending; and in default of the orators so proving and establishing said will within the time limited as aforesaid, their bill to be dismissed with costs to the defendants. If within the aforesaid time, the orators prove and establish said will by a final judgment of the county or supreme court, let the court of chancery further retain said cause; and if in due administration of the estate of said Conroe, the jurisdiction and powers of the probate court for the district of Addison prove inadequate to establish and protect the rights and title of the orators under said will, in the property, personal and real, in controversy, the court of chancery is directed to further proceed with said cause to the extent of granting the orators such relief in the premises as they may be entitled to in equity, and which the powers and jurisdiction of said probate court are inadequate to grant. If such ancillary aid of the court of chancery shall not be needed, then, finally, let the bill be dismissed upon such terms in respect to costs, as that court may deem equitable. Defendants Eells and Sperry to recover their costs in this court.*