EMMA A. MANNING and Another, Plaintiffs, *v.* ANDERSON GALLERIES, INC., and Another, Defendants.

Supreme Court, Albany County, April, 1927.

Ancient documents — title — action to determine title to document containing signature of American patriot — possession of property in absence of some explanation is some evidence of ownership — claim of State of Georgia that document was stolen not substantiated — evidence does not warrant finding that document was public record of Province or State of Georgia.

While possession of property, in the absence of some explanation, is some evidence of ownership, it is merely presumptive evidence thereof and may be overcome by any evidence showing actual title or ownership.

Accordingly, in this action to determine the title to a document containing the signature of Button Gwinnett, an American patriot, the claim of the State of Georgia to the document, predicated upon the fact that the document had been stolen or removed from the archives of the State, in which title, as a public record, is vested, must be dismissed in the absence of any evidence to overcome plaintiffs' proof of possession of the document in their hands, and the undisputed possession for many years by their testator.

The fact that the treaty of Paris in 1783 directed that all the archives, deeds and papers belonging to any of the States or their citizens which in the course of the Revolutionary War might have fallen into the hands of the British officers to be forthwith restored and delivered to the proper States and to persons to whom they belonged, does not warrant a finding that this document belongs to Georgia on the ground that among such Colonial records was the document containing Button Gwinnett's signature, and that the same became a public

record of the State of Georgia, in the absence of any evidence showing what papers, if any, were delivered to the State of Georgia pursuant to said treaty or any statute establishing that the document was a public record of the Province of Georgia or the State of Georgia to be retained in its archives.

ACTION to determine title to ancient will.

*Dugan & Bookstein* [*Avrom M. Jacobs* of counsel], for the plaintiffs.

*A. Jocelyn H. Magrath,* for the defendant Anderson Galleries, Inc.

*Davis, Wagner, Heater & Holton* [*Robert D. O'Callaghan, Charles R. Coulter* and *Erwin Bruce Hallett* of counsel], for the State of Georgia.

STALEY, J.    James H. Manning, late of the city of Albany, died in July, 1925, leaving a last will and testament whereby he appointed the plaintiffs as executrices thereof.    Among the property of James H. Manning was a valuable collection of manuscripts and original autograph signatures, including those of all the signers of the Declaration of Independence.    One of these autograph signatures is the subject of this action.

Button Gwinnett, an American patriot, was born in England in 1732, and came to America in 1770, where he purchased a tract of land on St. Catherine's Island, Ga., and devoted himself to agriculture.    He was elected a Representative to Congress in 1776, and in 1777 became President of the Provincial Council of the State of Georgia.    On July 4, 1776, as a Representative of Georgia, he signed the Declaration of Independence.    He died on May 27, 1777, as the result of a duel between him and Gen. McIntosh, in which he was mortally wounded.    In the collection of the Manning estate was the original last will and testament of Joseph Stanley, a will of real and personal property.    Button Gwinnett subscribed this will as an attesting witness.    The will was probated in the province of Georgia on December 24, 1771, and recorded on December 28, 1771.    The autograph signatures of Button Gwinnett are rare and extremely valuable.

The document in question came into the possession of the plaintiffs' testator by purchase for $4,600 at public auction in 1912.    Mr. Manning's predecessor in title was Elliot Danforth, at one time Treasurer of the State of New York, who acquired the Button Gwinnett signature at private sale in Georgia about the year 1901. Upon Mr. Manning's death, the defendant, the Anderson Galleries, Inc., was retained for the purpose of disposing of his collection of rare manuscripts.    This defendant catalogued the collection and made arrangement for its disposal at public auction.    The Button Gwinnett signature on the original Stanley will was sold by the Anderson Galleries, Inc., to the Rosenbach Company of

Philadelphia, on January 19, 1926, for the sum of $22,500 upon six months' guaranteed credit. This signature was delivered to the Rosenbach Company, but before the period of credit had expired the State of Georgia claimed title to the will containing the signature, and thereupon the Rosenbach Company returned the will to the Anderson Galleries, Inc. The plaintiffs then began this action against the Anderson Galleries, Inc., to recover the purchase price of the Button Gwinnett signature upon its guaranty. The State of Georgia has voluntarily intervened in this action and claims title to the document, its contention being that the will containing Button Gwinnett's signature was stolen or surreptitiously removed from its archives at a time and by a person unknown, and that title to the document is in it as a State public record.

The parties have agreed that, irrespective of the issues raised by the pleadings, the only issue to be litigated is that relating to the title or ownership or right of possession of the document containing the Button Gwinnett signature. If the plaintiffs are successful, then the defendant, the Anderson Galleries, Inc., will pay the purchase price. If, however, the State of Georgia is successful on the question of title, then the plaintiffs are not entitled to recover.

In the first place, the plaintiffs have shown possession of the document in their hands, and possession for many years by the testator, James H. Manning. They have thus given *prima facie* evidence of title. (*Wheeler* v. *Lawson,* 103 N. Y. 40; *Adelberg* v. *Horowitz,* 32 App. Div. 408.)

Possession of property alone and without explanation is evidence of ownership; but it is the lowest species of evidence. It is merely presumptive, and liable to be overcome by any evidence showing the character of the possession, and that it is not necessarily as owner. (*Rawley* v. *Brown,* 71 N. Y. 85.) A title resting on mere possession must yield to a proven title of ownership.

When the Stanley will was probated, Georgia was a Province subject to the authority of England. By the Treaty of Paris in 1783 (8 Stat. 83, art. 7) all the archives, deeds and papers belonging to any of the said States or their citizens which in the course of the war may have fallen into the hands of British officers, was agreed to be forthwith restored and delivered to the proper States and persons to whom they belonged. (Select Documents of U. S. History, McDonald, p. 17.) The State of Georgia now asserts that among those records was the original Stanley will, containing the Button Gwinnett signature; that the same became a public record of the State of Georgia, and that the State of Georgia is now the owner of the document, as it has never voluntarily parted with title to or possession of it.

The record contains no evidence as to what papers, if any, were delivered to the State of Georgia pursuant to the Treaty of Paris, and to sustain its claim that the document in question became a public record of that State various statutes of the Province and State of Georgia have been offered in evidence. An examination of these statutes, however, fails to establish that the original Stanley will was a public record of the Province of Georgia, or of the State of Georgia, to be retained in its archives.

Under the provisions of the first Constitution of the State of Georgia, the Legislature was directed, within five years after the foundation of the Constitution, to revise, digest and arrange the body of law, civil and criminal. Pursuant to this direction, and to carry it into effect, Marbury & Crawford's Digest of the Laws of the State of Georgia was compiled. This work has the reputation of having been executed with considerable skill in the arrangement and references. The colonial acts and orders in council were sifted and classified, and to these acts and orders were added the laws passed up to the time of the compilation. (Bench and Bar of Georgia, vol. 1, p. 238; Marbury & Crawford's Digest of the Laws of the State of Georgia, 1755–1800.)

The real basis of the claim that the Stanley will was a public record of the State of Georgia is a colonial act of 1755 (Marbury & Crawford's Dig. p. 111), entitled " An act to prevent fraudulent deeds of conveyance." Section 3 of this act provides as follows: " 3. And be it further enacted, That all wills and testaments conveying properties within this province, that have been formerly made and not recorded in the former office, be registered in the register of records' office of this province, within three months after the passing of this act, except such as have been or may be made in Europe, all which shall be registered as aforesaid, within a twelve month and a day, otherwise they are deemed and construed to be void; and all wills and testaments hereafter to be made within this province, shall be registered as above within three months from the death of the testator, in failure of which, the said wills or testaments shall be deemed and construed to be void and of no effect."

The colonial act of 1755 is included within Marbury & Crawford's Digest, although it may be noted that the only act of the State of Georgia in evidence here continuing the force and effect of this provincial enactment is the act of November 15, 1778, and that act continued it in force only to the end of the session of the next Assembly, which convened apparently on the first Tuesday in January, 1779. No evidence has been given in relation to the method of probating the will of 1771 in the Province of Georgia, except such as may be gleaned from the original record of the probate

of the Stanley will.   The record of this probate indicates that the will was proved before the Colonial Governor of the Province of Georgia.

The State of Georgia assumes that the requirement that wills and testaments be registered in the provincial office of the register of records, and that a record of the Stanley will was made there, vests the title of custody and ownership of the original will in the State of Georgia.   I cannot agree with the contention that such statute has that effect.   To all intents and purposes it is a mere recording statute, including within its provisions deeds and mortgages of lands, bills of sales of chattels, and mortgages thereon, as well as wills and testaments.   Its purpose primarily is to have a record in the public office of such muniments of title, in order that notice might be given thereof and thereby " prevent fraudulent deeds of conveyance."

The statute is silent as to the retention of any original documents required to be registered.   Common experience and the invariable practice established by law and custom indicates that registration of documents of the character referred to in the colonial statute is identical in procedure with the requirement of recording, and that after the record is made the original documents are returned as private papers to their owners.   Such would seem to be the view of Professor Wigmore, who, in referring to the statutory system of public registration originating in the Southeastern States, says that this policy implies a general resort to a public record as a source of proof, and for the sake of public convenience a general dispensation from the necessity of preserving as a muniment of title a class of documents whose legal importance is comparatively little apart from the record, and that the registration system implies that the original document need not be produced nor accounted for in any way.   (Wigm. Ev. [2d ed.] § 1224.)

The authority to retain a private paper such as an original will in public custody must be predicated upon some statutory enactment, or upon some legal practice or custom sustained by common law.   There is no proof in this case of such authority by any statutory enactment, nor do I find any rule of the common law which requires or permits it.   On the contrary, the ecclesiastical courts of England, which had probate jurisdiction, were limited to testaments which affected personalty, and had no jurisdiction over wills devising realty.   There was no provision by which the common-law courts of England could probate a will which devised realty.   A valid will affecting realty went into force and effect without the formality of probate.   If any question arose as to the validity of the will as a muniment of title to the realty devised, it was proved in an

ejectment or partition suit, just as a deed would be proved, allowing for the difference in the nature of the two instruments and the formalities of execution. (Page Wills [2d ed.], § 522; *Luther* v. *Luther*, 122 Ill. 558; *Knox* v. *Paull*, 95 Ala. 505; *Domestic & Foreign Missionary Society, Protestant Episcopal Church* v. *Eells*, 68 Vt. 497.)

A will of land probated in an ecclesiastical court did not become a part of the record there, because that court had no jurisdiction to render judgment upon a will of land, and, therefore, the will must be produced at common law, like any other document. (Wigm. Ev. [2d ed.] §§ 1215, 1238.) The possession of a will devising realty was a matter of concern to those who acquired title by a devise. The original will was their evidence of title, and a document of which they had the ownership and the right to possession. It would seem that the powers of a provincial Governor, acting as the ordinary of the Province, would be similar to those of the ecclesiastical courts. (*Matter of Brick*, 15 Abb. Pr. 12.) In the Stanley will, Samuel Elbert, of Savannah, was named as the sole legatee and sole devisee, as well as nominated as sole executor.

I, therefore, conclude that the State of Georgia has failed to prove its ownership or its right to possession to the document in question. Findings may be presented, awarding judgment to the plaintiffs.